**DANIEL S. HO, ESQ.**
State Bar No.  025311
**JUSTIN L. WYATT, ESQ.**
State Bar No. 032215
**LAW OFFICES OF HO & GREENE, PLLC**
11811 N. Tatum Boulevard, Suite 2900
Phoenix, Arizona 85028
Telephone:    (602) 354-7346
Facsimile:    (602) 354-7469
Email:        daniel@hogreenelaw.com
              justin@hogreenelaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SURGENEX, LLC, an Arizona Limited Liability Company; ABEL BULLOCK, an individual; | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | (Breach of Contract; Breach of Implied Covenant of Good Faith and Fair Dealing; Unjust Enrichment; Conspiracy; Conversion; Uniform Trade Secrets Act; Arizona Trade Secrets Act; Tortious Interference with Business Relations; Injunctive Relief; Declaratory Relief) |
| PREDICTIVE THERAPEUTIC, LLC, a Utah Limited Liability Company; PREDICTIVE BIOTECH, INC., a Utah Corporation; UTAH CORD BANK, INC., a Utah Corporation; DOUG SCHMID and JANE DOE SCHMID, husband and wife; ELLIOTT SPENCER and JANE DOE SPENCER, husband and wife; JOHN DOES I-X; JANE DOES I-X; BLACK CORPORATIONS I-X; WHITE PARTNERSHIPS I-X; AND/OR SOLE PROPRIETORSHIPS; and RED LIMITED LIABILITY COMPANIES I-X; | |
| Defendants. | |

Plaintiffs Surgenex, LLC, ("Surgenex"), an Arizona Limited Liability Company, and Abel Bullock ("Mr. Bullock")(cumulatively, "Plaintiffs") for their Complaint ("Complaint") against Defendants Predictive Therapeutics, LLC, ("Defendant Predictive"

or "Predictive") a Utah Limited Liability Company, Defendant Predictive Biotech, Inc., ("Defendant Biotech" or "Biotech") a Utah Corporation, Defendant Utah Cord Bank, Inc. ("Defendant UCB" or "UCB"), a Utah Corporation, Defendant Doug Schmid ("Defendant Schmid" or "Schmid"), and Defendant Elliott Spencer ("Defendant Spencer" or "Spencer")(cumulatively, "Defendants"), states and alleges as follows:

## PARTIES AND JURISDICTION

1.     Surgenex is an Arizona Limited Liability Company duly organized and existing under the laws of the State of Arizona, with its principal offices located at 15444 N. 76th Street, Suite C110, Scottsdale, Arizona, 85260.

2.     At all times material hereto, Mr. Bullock resided in the State of Arizona.  Mr. Bullock is a principal of Surgenex, and at all times material hereto, was acting on behalf of Surgenex.

3.     Defendant Predictive is a Utah Limited Liability Company, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 Parleys Way, Suite 100, Salt Lake City, UT 84109.

4.     Upon information and belief, Defendant Predictive caused events to occur in the State of Arizona out of which Plaintiffs' claims arise, and which is doing business in the State of Arizona.

5.     Defendant Biotech is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 E. Parleys Way, Suite 101, Salt Lake City, Utah 84109.

6.     Upon information and belief, Defendant Biotech caused events to occur in the State of Arizona, out of which Plaintiffs' claims arise, and which is doing business in the State of Arizona.

2

7.    Defendant UCB is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 8675 S. Sandy Parkway, Sandy, Utah, 84070.

8.    Upon information and belief, Defendant UCB caused events to occur in the State of Arizona, out of which Plaintiffs' claims arise, and which is doing business in the State of Arizona.

9.    At all times material hereto, Defendant Schmid resided in the State of Utah and was married to Jane Doe Schmid.  At all relevant times, Defendant Schmid was acting individually and on behalf of his marital estate.

10.    At all times material hereto, Defendant Schmid was conducting business within the course and scope of his employment with Defendant UCB as its agent and principal; accordingly, Defendant UCB is vicariously liable for the conduct of Defendant Schmid, in accordance with the Doctrine of *Respondeat Superior*.  As alleged above, Defendant Schmid was also acting individually an in his personal and marital capacity.

11.    At all times material hereto, Defendant Spencer resided in the State of Utah and was married to Jane Doe Spencer.  At all relevant times, Defendant Spencer was acting individually and on behalf of his marital estate.

12.    At all times material hereto, Defendant Spencer was conducting business within the course and scope of his employment with Defendant UCB as its agent and principal; accordingly, Defendant UCB is vicariously liable for the conduct of Defendant Spencer, in accordance with the Doctrine of *Respondeat Superior*.  As alleged above, Defendant Spencer was also acting individually an in his personal and marital capacity.

13.    Defendants have caused events to occur in the State of Arizona out of which Plaintiffs' claims arise, and are doing business in the State of Arizona.

14.    This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because (1) Surgenex is an Arizona Limited Liability Company

3

with its principal place of business in Scottsdale, Arizona, and its witnesses are either located in the Phoenix area or are available in the Phoenix area; (2) Defendant Predictive is a Utah Limited Liability Company; (3) Defendant Biotech, and Defendant UCB are Utah Corporations, and thus there is complete diversity of citizenship between Plaintiffs and Defendants; (4) the amount in controversy exceeds $75,000.00; (5) there are no other matters pending between the parties in any other jurisdiction; (6) Defendant UCB, through its agents, Defendant Schmid and Defendant Spencer, executed the contracts the various contracts contained *infra* which contained clauses specifying that they would be construed according to Arizona law and submitting to Arizona jurisdiction; and (7) Defendants have caused events to occur in the State of Arizona out of which Plaintiffs' claims arise.

15.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because this lawsuit relates to contracts entered into and/or conduct, acts, and/or omissions which occurred in the District of Arizona.

16.     The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendant UCB has a business relationship with Plaintiffs where they have contractually agreed to produce materials and products on an ongoing regular basis.

## GENERAL ALLEGATIONS

17.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

18.     Surgenex is the producer and distributor of the highest quality amniotic membrane tissue allograft in the industry, and produces products used for a wide variety of medical applications.

4

19.    In an effort to develop its product line and business, Surgenex sought out a laboratory to assist in the development and production of new processes, procedures, and protocols relating to allograft tissue.

20.    Surgenex eventually retained and contracted with Defendant UCB to assist in the development and production of processes, procedures, and protocols to further its business purpose, as set forth below.

### The Consultant Agreement with UCB

21.    On or about December 4, 2014, Mr. Bullock entered into a consultant agreement (the "Consultant Agreement") with Defendant UCB, attached hereto as **Exhibit A** and incorporated by reference herein.

22.    The Consultant Agreement was effectuated to assist Mr. Bullock, as a principal of Surgenex, in developing a proprietary protocol to harvest stem cells from amniotic and other stem-cell rich tissue, and to assist Surgenex in developing and producing biomedical products derived from stem cells.

23.    Pursuant to the Consultant Agreement, it was agreed that UCB would develop certain inventions, products, protocols, strategies, reports, technical information, designs, and other things that would be considered work product ("Work Product").

24.    Pursuant to the Consultant Agreement, the Work Product developed by UCB for, with, and/or pertaining to Surgenex would be "Work Made for Hire" as is defined in 17 U.S.C.S. § 101 and throughout the Copyright Act of 1976

25.    Pursuant to the Consultant Agreement, all right, title, and interest in and to any Work Product, including all modifications, derivative works, and copies were to remain the sole and exclusive property of Surgenex.

### The Non-Disclosure, Non-Circumvention and Non-Competition Agreement

26.    On or about December 16, 2014, Mr. Bullock and Surgenex entered into a non-disclosure, non-circumvention and non-competition agreement (the "Non-Compete

5

Agreement") with Defendant UCB, attached hereto as **Exhibit B** and incorporated by reference herein.

27.     Pursuant to the Non-Compete Agreement, Mr. Bullock and Surgenex would share confidential information, trade secrets and other confidential and/or proprietary information concerning the development of a protocol regarding morselized flowable tissue allograft derived from amniotic tissues.   This was established as the business purpose (the "Business Purpose").

28.     Pursuant to the Non-Compete Agreement, Defendant UCB and/or its agents agreed to keep confidential all analysis, processes, methods, techniques, systems, formula, research, *inter alia*, and all similar or related information ("Confidential Information") that Defendant UCB received relating to Surgenex that was not otherwise generally known to the public.

29.     Pursuant to the Non-Compete Agreement, Defendant UCB and/or its agents agreed to not use any advantages derivable from the Confidential Information in its own business or affairs.

30.     Pursuant to the Non-Compete Agreement, Defendant UCB and/or its agents expressly agreed to not compete with Surgenex in matters directly related to the Business Purpose.

31.     Pursuant to the Non-Compete Agreement, Defendant UCB and/or its agents explicitly agreed that it/they would not, directly or indirectly, contact, have discussions with, deal with, take any actions, or otherwise become involved with any third parties that would circumvent or impair Surgenex's ability to pursue its Business Purpose.

### The Manufacturing Agreement

32.     Having been successful at developing and inventing new processes, procedures, and protocols relating to allograft tissue, Surgenex sought to enter commercial production of certain products.

6

33. On or about April 2, 2015, Surgenex entered into a manufacturing contract (the "Manufacturing Contract") with Defendant UCB, attached hereto as **Exhibit C** and incorporated by reference herein.

34. Pursuant to the Manufacturing Contract, Defendant UCB agreed to commercially manufacture certain allograft products for Surgenex.

35. Defendant UCB commenced production and Surgenex and Defendant UCB engaged in a satisfactory relationship.

36. The Consultant Agreement, Manufacturing Agreement, and Non-Compete Agreement may be cumulatively referred to as the "Contracts" for brevity.

**Defendant UCB**

37. At all relevant times, Defendant UCB was the entity engaged by Plaintiffs to develop proprietary protocols to harvest stem cells from amniotic and other stem-cell rich tissue, and to assist Surgenex in developing and producing biomedical products derived from stem cells, as discussed *supra*.

38. Defendant UCB was engaged through the Contracts and was given proprietary information, and was contracted to develop and produce products

39. Plaintiffs, through Defendant UCB, developed protocols and products that are confidential and protectable.

40. Defendant UCB allowed Plaintiffs' Confidential Information, Work Product, and other protected information to be disseminated to outside parties, in violation of the Contracts.

41. Defendant UCB is now directly manufacturing, marketing, and competing with Surgenex with the product known as "Stemshot," which was developed using Work Product and Confidential Information belonging to Plaintiffs

**Defendant Schmidt**

7

42.    At all relevant times of contracting, Defendant UCB had two principals, Defendant Spencer, the Chief Executive Officer ("CEO"), and Defendant Schmid.

43.    Upon information and belief, and at all relevant times, Defendant Schmid was an officer and/or agent of UCB, and held a 40% ownership in Defendant UCB.

44.    All relevant Contracts were timely and properly executed by Defendant Spencer, thus binding Defendant UCB, its agents and official representatives.

45.    Defendant Schmid actively participated in the development, fabrication, and production of Surgenex's Work Product.

46.    Defendant Schmid was exposed to and received significant and substantial Confidential Information relating to Surgenex and/or Surgenex's Work Product.

47.    On or about December 2015, Defendant Schmid provided notification to Defendant Spencer that he was leaving Defendant UCB and would be selling his interest to pursue other opportunities.

48.    Upon information and belief, Defendant Schmid was courting other companies in a wrongful effort to exploit, convert, and usurp Surgenex's Work Product, Confidential Information, and opportunities.

49.    Upon information and belief, Defendant Schmid contracted and/or was retained by Defendant Predictive on or about February, 2016.  Defendant Predictive was a biotech company at the time, but is now a direct competitor to Surgenex.

50.    After receiving notice that Defendant Schmidt was pursuing this course of action, in an effort to protect its interests and property, Surgenex, through counsel, sent a cease and desist letter to Defendant Schmid, Defendant Predictive, and Defendant UCB on or about February 8, 2016 (the "C&D Letters").  The C&D Letters were sent through the United States Postal Service via Certified Mail.

51.    In the C&D Letters, Surgenex identified and put on formal notice its position regarding the wrongful activities of all Defendants.  Surgenex asserted its position on the

8

proprietary and confidential nature of the products and process, and that it would aggressively pursue any and all breaches.

52. Defendant Schmid responded via email on February 11, 2016 (the "February 11 Email"). In the February 11 Email, Defendant Schmid asserted that he was not bound by any contract with Surgenex because he did not sign them.

53. Defendant Schmid further asserted that he "does not have a contract with Predictive." He further asserted and admitted: "I will be competing in the stem cell and stem cell product arena, but will not be using macerated amniotic membrane product." This assertion is in direct violation to the Contracts with UCB, under which Defendant Schmid is bound.

54. After receiving additional information that Defendant Schmid had been in contact and/or sharing Confidential Information and Work Product with Defendant Predictive, Surgenex's counsel sent Defendant Schmid another letter dated February 29, 2016 (the "February 29 Letter").

55. In the February 29 Letter, Surgenex re-asserted its position and advised Defendant Schmid that he was already potentially in breach and suffered a severe misunderstanding of agency and contract law. Surgenex urged Defendant Schmid to retain counsel prior to proceeding down his current path, in an effort to avoid protracted litigation.

56. Defendant Schmid once again responded via email on March 4, 2016 (the "March 4 Email"). In the March 4 Email, Defendant Schmid states and admits that he has "used much of [Surgenex's] invention to isolate messenger RNA from endothelial cell layers."

57. Upon information and belief, Defendant Schmid is now contracted and/or employed by Defendant Predictive and/or Defendant Biotech.

9

58. Upon information and belief, Defendant Schmid has and/or continues to breach the Contracts that he is bound to by releasing and/or using Work Product and Confidential Information belonging to Surgenex.

59. Upon information and belief, Defendant Schmid has developed, assisted in developing, or directed – either alone or with assistance of other Defendants, a competitive product that is conspicuously similar to Surgenex's products.

60. Defendants Schmid, Predictive, and Biotech now compete directly with Surgenex in a very unique field that was unknown to them prior to Surgenex retaining UCB.

61. Upon information and belief, Defendant Schmid holds himself out to be the "founder" of Surgenex, and represents that he invented the proprietary processes and Work Product.

**Defendant Spencer**

62. At all relevant times of contracting, Defendant Spencer was the President and CEO of Defendant UCB.

63. Upon information and belief, and at all relevant times, Defendant Spencer was an officer and agent of Defendant UCB, and held a 60% ownership in Defendant UCB.

64. All relevant Contracts were timely and properly executed by Mr. Spencer, thus binding Defendant UCB, its agents and official representatives.

65. Defendant Spencer actively participated in the development, fabrication, and production of Surgenex's Work Product.

66. Defendant Spencer was exposed to and received significant and substantial Confidential Information relating to Surgenex and/or Surgenex's Work Product.

67. Upon information and belief, Defendant Spencer allowed Surgenex's Confidential Information, Work Product, and other protected and proprietary information to be disclosed to Defendants and other outside parties, in violation of the Contracts.

68.   Upon information and belief, Defendant Spencer has and/or continues to breach the Contracts that he is bound to by releasing and/or using Work Product and Confidential Information belonging to Surgenex.

69.   Upon information and belief, Defendant Spencer has developed, assisted in developing, or directed – either alone or with assistance of other Defendants, a competitive product that is conspicuously similar to Surgenex's products.

70.   Upon information and belief, Defendant Spencer, through Defendant UCB, is now producing and marketing a competitive product called "Stemshot," that was developed using Work Product and Confidential Information belonging to Plaintiffs.

**Defendant Predictive and/or Defendant Biotech**

71.   On or about January, 2016, Defendant Predictive and/or Defendant Biotech approached Defendant UCB in an attempt to purchase Defendant UCB.

72.   Defendant Biotech is a wholly-owned subsidiary of Defendant Predictive.

73.   Upon information and belief, this purchase attempt was a veiled attempt to acquire proprietary information for competing products being produced at Defendant UCB – namely, Surgenex's materials, including Work Product and Confidential Information.

74.   Upon information and belief, Defendant Predictive and/or Defendant Biotech requested Surgenex's proprietary customer list from Defendant UCB, which was Confidential Information.

75.   Upon information and belief, Defendant Predictive and/or Defendant Biotech sought to make a competitive product and submit it to Surgenex's customers.

76.   Later, as discussed *supra*, Defendant Schmid left Defendant UCB and was retained by Defendant Predictive.

77.   Once Surgenex's principal was notified of the behavior of Defendant Schmid and Defendant Predictive, he acted promptly to protect the interests of Surgenex.

11

78.   As discussed *supra*, Surgenex's counsel sent Defendant Predictive a C&D Letter via Certified Mail on or about February 8, 2016.

79.   Duplicate letters were sent to both Bradley Robinson ("Mr. Robinson") directly, as well as to Defendant Predictive's office address.  Mr. Robinson is the President of Defendant Predictive.

80.   On or about February 11, 2016, Mr. Eric Olson ("Mr. Olson") placed a call to Surgenex's counsel's office to discuss the C&D Letter Defendant Predictive had received.  Mr. Olson is the President and CEO of Defendant Biotech.

81.   Mr. Olson asserted that Defendant Predictive had interviewed Defendant Schmid, but had no type of agreement with Defendant Schmid.

82.   Mr. Olson further asserted that they had not received any information from Defendant Schmid regarding Surgenex's products or Confidential Information.

83.   Mr. Olson further asserted that they had interviewed Defendant Schmid, but had not contracted or engaged him in any way, and had no current plans to do so.

84.   Surgenex's counsel requested that Mr. Olson draft and send a letter confirming his statements and Defendant Predictive's position.

85.   After failing to receive the agreed-upon letter from Mr. Olson, and after learning about additional communications and breaches between Defendant Schmid and Defendant Predictive, Surgenex's counsel sent another letter to Defendant Predictive on or about February 29, 2016 (the "February 29, Letter").

86.   On or around March 9, 2016, Mr. Olson again contacted Surgenex's counsel to discuss the February 29, Letter.  He was extremely agitated.  Mr. Olson asserted that they had still not retained and/or received anything from Defendant Schmid, and that if they did, they would immediately contact Surgenex's counsel.

87.   Mr. Olson then forwarded a letter that he had apparently drafted on February 7, 2016, after the initial conversation, but it was inadvertently sent to the incorrect email

address, and not timely received by Surgenex's counsel. The letter was received by Surgenex's counsel on March 9, 2016 (the "March 9 Letter")

88. Pursuant to the March 9 Letter, Predictive "is not, and never has had access to any proprietary information related to the development of manufacturing."

89. Further, the March 9 Letter asserts that they "do not have any type of agreement with Mr. Schmid for employment or consulting."

90. Upon information and belief, Defendants Predictive and/or Biotech have used Work Product and Confidential Information belonging to Surgenex to develop the same or substantially similar or derivative products, processes, and/or protocols.

91. Upon information and belief, Defendants Predictive and/or Biotech have begun selling and competing with Surgenex in a market/field that was known only to Surgenex, and that could not have been known without Confidential Information from Surgenex.

92. The concept upon which Defendants Predictive and/or Biotech were and are competing was pioneered and developed by Surgenex under the protection of the Contracts.

93. Due to Defendants' actions described above, Plaintiffs sustained damages in an amount to be proven at trial.

## COUNT I
### (Breach of Contract – Defendants UCB, Schmid, and Spencer)

94. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

95. Pursuant to the Contracts, Plaintiffs and Defendants UCB, Schmid, and Spencer agreed to certain terms for the development, fabrication, and production of Work Product belonging to Surgenex.

13

96.     Pursuant to the Contracts, Plaintiffs and Defendants UCB, Schmid and Spencer agreed to certain obligations and behavior related to confidentiality, competition, and circumvention.

97.     Defendants UCB, Schmid and Spencer breached the Contracts and/or failed to fulfill the material terms of the Contracts.

98.     Pursuant to A.R.S. § 44-1201, Plaintiffs are entitled to interest on all sums due to Plaintiffs at the rate of 10% per annum from March 15, 2017, until paid.

99.     Plaintiffs are entitled to an award of their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.  If this matter proceeds as a default, a reasonable sum as and for Plaintiffs' attorneys' fees is the sum of $10,000.00.

**COUNT II**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing**
**– Defendants Schmid and Spencer)**

100.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

101.   Defendants Schmid and Spencer are bound by the Contracts as employees and/or agents of UCB.

102.   Every contract carries with it the implied covenant of good faith and fair dealing.

103.   Defendants have breached that covenant by the actions described above.

104.   Defendants made material representations to and concealed material facts from Plaintiffs, as described above.  Such representations include, but are not limited to, the willingness and ability to abide by the Contracts; the fact that Defendants were engaging or discussing relations with Defendants Predictive and Biotech; Defendant Schmid's efforts and intention to leave Defendant UCB and compete directly with Plaintiffs with Plaintiffs' Work Product and Confidential Information.

105.   Plaintiffs have been harmed by the above-described behavior of Defendants.

106. Plaintiffs have suffered and will continue to suffer irreparable injury and monetary damages as a result of Defendants' breach unless and until the Court grants relief.

## COUNT III
**(Unjust Enrichment – Defendants Schmid, Spencer, Predictive, and Biotech)**

107. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

108. Defendants have benefited and been enriched by the receipt of Plaintiffs' Work Product, Confidential Information, derivative products, and misappropriation of Business Expectancies.

109. Plaintiffs are entitled to the fair and reasonable value of the lost revenue and misappropriation of Work Product, Confidential Information, derivative works and product, as well as lost market share and other losses to be established.

110. Despite Plaintiffs' Demands, Defendants have failed and/or refused to cease using and misappropriating Plaintiffs' Work Product and Confidential Information, and continue to profit from derivative product.

111. Pursuant to A.R.S. § 12-341.01, Plaintiffs are entitled to an award of its attorneys' fees.  If this matter proceeds by default, Plaintiffs alleges that a reasonable amount of their attorneys' fees is $10,000.00.

## COUNT IV
**(Conspiracy – Defendants Schmid, Spencer, Predictive, and Biotech)**

112. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

113. Pursuant to the Contracts, Plaintiffs and Defendants agreed to certain terms regarding the development and production of Work Product, Confidential Information, and finalized commercial products.

15

114. Defendants, in conjunction with one another, had the intent to promote or aid in the commission of an offense or unlawful objective, namely conversion of Plaintiffs' Work Product, Confidential Information, and to interfere with Plaintiffs' Business Expectations.

115. Defendants engaged in an unlawful, overt act in furtherance of the offense and/or conspiracy.

116. As a result of Defendants' actions, Plaintiffs sustained damages.

117. Upon information and belief, Defendants acted with a consistent pattern to undermine the Contracts to the detriment of Plaintiffs, to the extent that their conduct constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause injury and thus, constitutes conduct sufficient to incur a penalty of punitive damages.

118. Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

**COUNT V**
**(Conversion – Defendants Schmid, Spencer, Predictive, and Biotech)**

119. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

120. Defendants intentionally exercised dominion and control over property belonging to Plaintiffs – namely, intellectual property, Work Product, and Confidential Information – thereby destroying the right of Plaintiffs to control and use said property. As such, Defendants conduct constituted a conversion.

121. As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have been damaged in an amount to be proven at trial.

122. In converting Plaintiffs' property, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

123. Upon information and belief, Defendants acted with and evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

124. Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in in the future.

## COUNT VI
**(Violations of the Uniform Trade Secrets Act, 18 U.S.C. § 1905 – All Defendants)**

125. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

126. Upon information and belief, Defendants, by improper means, acquired and misappropriated legally protectable trade secret information, including, *inter alia*, intellectual property, proprietary client information, Confidential Information, Work Product, and confidential processes, procedures, and protocols.

127. This trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic values from its disclosure or use.

128. Plaintiffs undertook reasonable efforts under the circumstances to maintain the secrecy of this trade secret information.

129. This acquisition was performed by a person or people who knew, or who should have known, that it was being acquired by improper means, and those persons or people used improper means to acquire Plaintiffs' trade secrets.

130.   Upon information and belief, Defendants acted willfully and maliciously in acquiring and misappropriating Plaintiffs' trade secret information.

131.   As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

132.   In misappropriating Plaintiffs' trade secrets, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

133.   Pursuant to 18 U.S.C. § 1905, Plaintiffs are entitled to an award of reasonable attorneys' fees, based on Defendants' willful and malicious misappropriation of trade secrets.

### COUNT VII
**(Violations of the Arizona Trade Secrets Act, A.R.S. § 44-401 *et seq*
–   All Defendants)**

134.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

135.   Upon information and belief, Defendants, by improper means, acquired and misappropriated legally protectable trade secret information, including, *inter alia*, intellectual property, proprietary client information, Confidential Information, Work Product, and confidential processes, procedures, and protocols.

136.   This trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic values from its disclosure or use.

137.   Plaintiffs undertook reasonable efforts under the circumstances to maintain the secrecy of this trade secret information.

138.   This acquisition was performed by a person or people who knew, or who should have known, that it was being acquired by improper means, and those persons or people used improper means to acquire Plaintiffs' trade secrets.

18

139. Upon information and belief, Defendants acted willfully and maliciously in acquiring and misappropriating Plaintiffs' trade secret information.

140. As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

141. In misappropriating Plaintiffs' trade secrets, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

142. Pursuant to A.R.S. § 44-401 *et seq*, Plaintiffs are entitled to an award of reasonable attorneys' fees, based on Defendants' willful and malicious misappropriation of trade secrets.

## COUNT VIII
### (Tortious Interference with Business Relations – All Defendants)

143. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

144. Plaintiffs engage in production and sale of proprietary stem cell products, and maintain, own, and utilize Confidential Information and Work Product in furtherance of their business expectancies.

145. Defendants were aware and had knowledge of the above-described business expectancy of Plaintiff's customers, clientele, and/or prospective customers and clientele.

146. Defendants intentionally and improperly interfered with Plaintiffs' relationships with current and/or prospective customers and/or clientele by, *inter alia*, breaching the Contracts with Plaintiffs, soliciting existing clientele and/or customers, misappropriating clientele and/or customers, improperly competing with converted property and/or derivative property, misrepresenting themselves, and failing to cease and desist when instructed by Plaintiffs.

147.  As a result of the actions by Defendants, Plaintiffs' business relationship and business expectancy has been disrupted and Plaintiffs have been damaged and continue to suffer damages.

148.  Defendants acted improperly by interfering with Plaintiffs' business relationships and business expectancy, thereby causing damages to Plaintiffs in an amount to be proven at trial.

149.  Upon information and belief, Defendants acted with an evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

150.  Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

**COUNT IX**
**(Injunctive Relief – All Defendants)**

151.  Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

152.  As a remedy for the aforementioned claims, Plaintiffs are entitled to injunctive relief, pursuant to the explicit agreement in the Contracts, enjoining Defendants from engaging in the above-described activities.

153.  Further, given the extremely competitive and proprietary nature of the stem cell industry and its unique characteristics and value, Plaintiffs do not have an adequate remedy at law, and an order enjoining Defendants from continuing to provide information, assistance, or any other Confidential Information or Work Product to any party is appropriate pursuant to the plain language of the Contracts.

154.  Plaintiffs have a reasonable likelihood of success on the merits as to the claims asserted in this Complaint.

20

155. Plaintiffs lack adequate remedy at law and faces irreparable harm unless injunctive relief is granted.

### COUNT X

### (Declaratory Relief – All Defendants)

156. Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

157. Defendant Predictive, Defendant Biotech, and Defendant UCB are sham corporations created for the improper and unlawful purpose of concealing from Plaintiffs its deceptive conduct and the above-described conspiracy.

158. Defendant Predictive and/or Defendant Biotech, serve as the alter egos of Defendant Schmid and do not adequately preserve the corporate form.

159. Defendant UCB serves as the alter ego of Defendant Spencer and does not adequately preserve the corporate form.

160. Plaintiffs are entitled to pierce the corporate veil for both Defendant Predictive and Defendant Biotech and hold Defendant Schmid personally responsible for the obligations of Defendant Predictive and Defendant Biotech, respectively.

161. Plaintiffs are entitled to pierce the corporate veil for Defendant UCB and hold Defendant Spencer personally responsible for the obligations of Defendant UCB.

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

    A. For an amount to be proven at trial;

    B. For interest on the principal sum at the highest rate allowed per annum from the date of Defendants' breach, until paid;

    C. For punitive damages in an amount sufficient to punish the Defendants jointly and severally and to deter similar future conduct by the Defendants and other similarly situated parties;

    D. For a declaration that Defendant Predictive, Defendant Biotech and Defendant

21

UCB are sham corporations created for an improper purpose and, conjunctively or independently, that Defendant Predictive and Defendant Biotech are the alter egos of Defendant Schmid, and that Defendant UCB is the alter ego of Defendant Spencer, and therefore, Defendant Schmid is personally liable for all debts and obligations of Defendant Predictive and Defendant Biotech, and that Defendant Spencer is personally liable for all debts and obligations of Defendant UCB;

E.  For Plaintiffs' reasonable attorneys' fees incurred, or, if this matter proceeds by default, then in the amount of $10,000.00;

F.  For injunctive relief;

G.  For Plaintiffs' costs incurred herein; and

H.  For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, demand is hereby made for trial by jury of all issues in this action.

RESPECTFULLY SUBMITTED this 25th day of July, 2017.

LAW OFFICES OF HO & GREENE, PLLC


/s/ Daniel S. Ho
Daniel S. Ho, Esq.
Justin L. Wyatt, Esq.
*Attorneys for Plaintiffs*

22