# EXHIBIT A

CONSULTANT AGREEMENT

THIS AGREEMENT ("Agreement") is made and entered into as of the _4th day of __December_, 2014 between Abel Bullock ("Bullock") and Utah Cord Bank, Inc., a Utah corporation ("Consultant").

WHEREAS, Bullock desires to develop biomedical products derived from stem cells; and

WHEREAS, Consultant is familiar with the methods and technologies necessary to create a protocol to produce the products.

NOW, THEREFORE, in consideration of the promises, the mutual agreements hereinafter contained, and other good and valuable consideration, the parties agree as follows:

1.      **INDEPENDENT CONTRACTOR.** Consultant agrees to perform all services as an independent contractor and not as a subcontractor, agent or employee of Bullock or his affiliates. Bullock retains no control or direction over the Consultant, Consultant's employees and/or subcontractors, or over the detail, manner or methods of performance of the services by the Consultant, Consultant's employees and/or subcontractors.

2.      **SCOPE OF SERVICES AND PERFORMANCE.** Consultant agrees to faithfully, diligently, and efficiently perform the duties as set forth on Addendum A to this Agreement and as may be reasonably requested by Bullock, pursuant to the agreement of both parties. Consultant agrees to provide a written status report to Bullock detailing the services performed by Consultant pursuant to this Agreement.  Such status report shall include a level of detail mutually agreed upon by the parties.

3.      **REPRESENTATIONS AND WARRANTIES.** Consultant represents and warrants that Consultant's performance of the services pursuant to this Agreement will not violate any agreement or obligation between Consultant and any third party.

4.      **INVOICING AND PAYMENTS FOR SERVICES.** The Bullock agrees to pay Consultant as outlined in Addendum A, which is incorporated into this Section 4 and Agreement by reference. Consultant shall provide an invoice for payment to Bullock upon the attainment of the milestones set forth on Addendum A. Payments on invoices shall be made on or before 10 days after receipt by Bullock.

5.      **TERM AND TERMINATION**

(A)     The term of this Agreement shall upon the earlier of (a) the completion of the services described on Addendum A or (b) upon Consultant's determination that it cannot complete a successful protocol after the failure to meet any of the milestones set forth in Addendum A.

(B)     Either party may terminate this Agreement effective immediately in the event the other has materially breached any Section of this Agreement.

(C)     Upon the termination of this Agreement for any reason whatsoever, Bullock

shall pay Consultant for work completed and invoiced in accordance with Sections 2 and 4 of this Agreement. Bullock shall have the right to deduct or offset any sums advanced by or owed to Bullock by Consultant from any sums due or to become due to Consultant.

(D)    Upon termination of this Agreement for any reason, Consultant will deliver to Bullock, and will not keep in Consultant's possession or control, recreate, or deliver to anyone else, any and all records, data, notes, reports, correspondence, materials, or other documents or property (or any reproductions) belonging or pertaining to Bullock or the services performed by Consultant pursuant to this Agreement.

6.    **OWNERSHIP OF WORK**

(A)    During the course of performance of this Agreement, it is understood that Consultant will develop certain strategies, reports, technical information, inventions, software, products, processes, apparatuses, programs, discoveries, designs, or any other things that may pertain to Bullock ("Work Product"). Such Work Product shall be a "Work Made for Hire" as that phrase is defined in 17 U.S.C.S. § 101 and used throughout the Copyright Act of 1976. All right, title, and interest in and to any Work Product which may be developed by Consultant as part of the consultation, services and advice provided by Consultant pursuant to this Agreement, including all modifications, derivative works, and copies shall remain the sole and exclusive property of Bullock.

(B)    Consultant hereby assigns to Bullock any and all right, title, and interest it may have in such Work Product, together with all intellectual property therein. Consultant will render all customary and reasonable assistance to Bullock, at Bullock's expense, including, without limitation, execution and delivery of any documents reasonably requested by Bullock to secure, perfect, register, and enforce all such rights.

7.    **PROPRIETARY AND CONFIDENTIAL INFORMATION**

(A)    Consultant acknowledges and agrees that during the course of Consultant's business relationship with Bullock, Consultant will have access and/or has had access to and will learn and/or has learned confidential, proprietary, and trade secret information which may include, without limitation, the identities, addresses, phone numbers, other contact information of Bullock's current and prospective clients and customers, Bullock's financial matters, Bullock's research and development activities and results, product evaluation, business strategies, business plans and marketing techniques, and any and all other information not known by others which provides Bullock an advantage over others in its industry. All such information will hereinafter be referred to as "Confidential Information." Notwithstanding anything to the contrary herein, no documentation or information shall be deemed Confidential if such information (i) is or becomes publicly known through no fault of Consultant or any person acting on Consultant's behalf; or (ii) is received from a person not subject to a confidentiality restriction and without breach of this Agreement.

(B)    Consultant acknowledges and agrees that all Confidential Information obtained and/or learned by Consultant during the business relationship with Bullock is or will be valuable property of Bullock. Consultant further acknowledges and agrees that the Confidential Information will be and/or has been made available for the sole purpose of enabling Consultant to provide independent contractor services to Bullock. Consultant agrees that Consultant will not use the Confidential Information for Consultant's benefit or divulge or communicate it in any way to any person or entity, except as authorized by Bullock. Nothing in this Agreement, however, shall prohibit Consultant from using or disclosing Confidential Information to the extent required by law. If Consultant is required by applicable law to disclose any Confidential

Information, Consultant shall (1) provide Bullock with prompt notice before such disclosure so that Bullock may attempt to obtain a protective order or other assurance that confidential treatment will be accorded such information; and (2) cooperate with Bullock in attempting to obtain such order or assurance.

8.    **REMEDIES.**  Consultant's obligations under Sections 5(D), 6 and 7 shall survive the expiration or termination for any reason of this Agreement and the termination of Consultant's relationship with Bullock regardless of the manner of such termination and shall be binding upon Consultant's heirs, successors, and assigns. The parties agree that a violation by the Consultant of Sections 5(D), 6, and/or 7 of this Agreement will cause irreparable damage to Bullock which cannot be easily and fairly quantified.  For that reason, Consultant agrees that Bullock shall be entitled, as a matter of right, to an injunction from any court of competent jurisdiction, restraining any further violation of such sections.  This remedy shall be in addition to any other rights and remedies Bullock may have pursuant to this Agreement or law, including, specifically, the recovery of monetary damages, whether compensatory or punitive.

9.    **APPLICABLE LAW / DISPUTE RESOLUTION / VENUE.**  The rights, obligations, and remedies of the parties as specified under this Agreement shall be interpreted and governed in all respects by the laws of the State of Arizona.  All disputes under this Agreement shall be resolved exclusively in the federal and state courts in and for the State of Arizona, County of Maricopa.  The prevailing party in any such dispute shall be entitled to its reasonable attorneys' fees and costs including the cost of appellate proceedings.  Nothing herein shall prohibit Bullock from seeking immediate injunctive relief in any court of competent jurisdiction for Consultant's breaches of Sections 5(D), 6, and/or 7 of this Agreement.  Bullock and Consultant hereby consent to the personal jurisdiction of the state and federal courts, mediators, and arbitrators, located in Maricopa County, Arizona.

10.    **ENTIRE AGREEMENT.**  Consultant acknowledges that Consultant has read this Agreement, understands its content and agrees to the terms and conditions hereof and further agrees it is the complete and exclusive statement of the agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relative to the subject matter of this Agreement unless such documents or communications are specifically included herein.  No modifications of or amendments to the Agreement or any waiver of any rights under the Agreement will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in duties or compensation will not affect the

validity or scope of this Agreement.        The parties agree that each has reviewed this Agreement and has had the opportunity to have counsel review the same and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or any amendment or any exhibit thereof.

11.    **SEVERABILITY.**  If one or more of the provisions, or any portion of any provision, in this Agreement is/are deemed void or is/are by law unenforceable or become unenforceable, the parties to this Agreement agree that a court may sever that portion of the Agreement.  The parties further agree that all other provisions not deemed void or unenforceable will continue in full force and effect.

12.    **COUNTERPARTS/FACSIMILES.**  This Agreement may be executed in one or more counterparts.  Facsimile copies hereof and facsimile signatures thereon shall have the same force and effect as originals.

13.    **SUCCESSORS.**  This Agreement may not be assigned, conveyed, or transferred in whole or part by Consultant, except upon Bullock's prior written consent.   Any attempted assignment of this Agreement without Bullock's written consent shall be null and void (and vest

no rights in the purported assignee), and shall, at the election of Bullock, constitute a default by Consultant under this Agreement.   Bullock may assign the rights and obligations of this Agreement to any entity owned in whole or part by Bullock.

Utah Cord Bank, Inc.

_____
Abel Bullock

By:_Eliott Spencer____

## ADDENDUM A

1.        Work to be Performed.  Subject to and upon the terms and conditions contained herein, Bullock hereby engages the Consultant to create a protocol for (morselized flowable tissue allograft derived from amniotic tissues).   Consultant estimates that the services to be provided hereunder will be completed in sixty (60) days but in any event not later than one hundred and twenty (120) days.

2.        Compensation.  In consideration for its services and the successful completion of the below listed milestones, Consultant shall be paid a total of $20,000 as follows:

(a)      $5,000 upon execution of this Agreement;

(b)      $5,000 upon completion of a Competitor product analysis

(c)      $5,000 upon completion of a competitive, viable product ready for sale.

(d)      $5,000 for delivery of a completed protocol binder

3.        No Other Payment.  Consultant agrees, represents, and warrants that Consultant is not entitled to any compensation or remuneration in connection with any other business or project other than as specifically set forth in this Agreement.

4.        Bullock Responsibility.  Bullock, at his sole expense, shall be responsible to obtain and deliver the competitor products for analysis necessary for Consultant to perform services and create the protocol.