# EXHIBIT B

NON-DISCLOSURE, NON-CIRCUMVENTION AND NON-COMPETITION AGREEMENT

This NON-DISCLOSURE, NON-CIRCUMVENTION and NON-COMPETITION AGREEMENT is effective as of _12/16/14, 2014 by and between Abel Bullock and Surgenex, LLC individually or collectively, and on behalf of any/all/other affiliated companies, or approved agents and official representatives of the above organizations

(hereinafter the "Companies"); and Utah Cord Bank, Inc., a Utah corporation. (hereinafter "Confidant"),

whose address is:

**1.      Purpose**
The parties to this Agreement desire to engage in discussions regarding present and/or potential future business relationships. This Agreement combines a non-disclosure, a non-competition, and a non-circumvention agreement enduring for a period set forth in Paragraph 7 below.  The parties intend to engage in substantive discussions and sharing of confidential information regarding certain new and useful business opportunities, trade secrets, business entity formation and structuring, and tax planning regarding the development of a protocol regarding morselized flowable tissue allograft derived from amniotic tissues (the "Business Purpose").  In connection with these discussions, it may be necessary and/or desirable for the Company to provide the Confidant with, or allow access to, proprietary, technical, or business data, and/or other confidential information of the Company (collectively the "Confidential Information").  Therefore, the Confidant, individually and on behalf of those they represent, agree that they are under an obligation of confidentiality. The Company believes, and the Confidant hereby agrees, that the Company's Confidential Information has significant commercial value that would be diminished by unauthorized disclosure. Accordingly, the commitments of confidentiality in this Agreement are a condition to the Confidant's willingness to engage in the contemplated business discussions and planning.  The Confidant agrees that it shall not use any advantages derivable from such information in its own business or affairs, unless the same is done pursuant to a new agreement with all other signatories to this document. Each signing party shall be held responsible and liable in case of a breach of this Agreement both in their professional and personal capacity.

**2.      Confidential Information**
Confidential Information shall include, and shall be deemed to include, all information conveyed by the Company to the Confidant orally, in writing, by demonstration, or by other media related to the business, products, services, research or development of the Company relating to the Business Purpose, including without limitation: (a) compilations of data (whether in whole or in part) and all analyses, processes, methods, techniques, systems, formulae, research, records, reports, manuals, documentation and models relating thereto; (b) computer software, documentation and databases (whether existing or in various stages of research and development; (c) identities of and information about the Company's suppliers and customers and their confidential information, suppliers and customers; (d) inventions, designs, developments, devices, methods and processes (whether or not reduced to practice); (e) internal business information, including, without limitation, information relating to strategic and staffing plans and practices (including information with respect to potential acquisition targets), marketing, promotional and sales plans, practices or programs, training practices and programs, cost and pricing structure, and accounting and business methods; and (f) all similar or related information.  Confidential Information shall be considered as such at the time of transmittal.    However, Confidential Information shall not include information, which can clearly demonstrated to be:

     a.       Generally known or available to the public, through no act or omission on the part of the receiving party. However Confidential Information shall not be deemed to be excluded merely because individual portions or components of such information are publicly known or available; or

b.  Provided to the receiving party by a third party without any restriction on disclosure and without breach of any obligation of confidentiality owed to the Company or any of its Affiliates at the time such Confidential Information was or is disclosed to Confidant; or

c.  independently developed by the receiving party without use of the Confidential Information.

3.  **Obligation of Confidentiality**

The Confidant agrees that when receipt of any Confidential Information has occurred:

a.  The Confidant shall not disclose or communicate Confidential Information to any third party, except as herein provided. Confidant shall protect such information from disclosure by reasonable means, including but not limited to at least the same minimal level of security that Confidant uses for its most crucial proprietary and trade secret information.

b.  Confidant shall reasonably protect the Confidential Information with not less than the same degree of care exercised by its own personnel to protect its own, or publication of its own, most valuable confidential and proprietary information.

c.  The Company shall permit access to its Confidential Information to the Confidant's agents or employees or third parties only if such disclosure is reasonably believed to be necessary to the purposes of the Confidant evaluating, contemplating, recommending, or engaging in any program or service offered by the Company or for the purpose of entering into a business relationship with the Company, and only if said agents, employees, or third parties:

1.  reasonably require access to the Confidential Information for purposes approved by this Agreement, and

2.  have been apprised of this Agreement and the Confidant's obligations to maintain the trade secret status of Confidential Information and to restrict its use as provided by this Agreement.

4.  **Obligation of Non-Competition**

The non-competition provisions of this Agreement are an essential and material part of the total agreement, by which the Confidant agrees it shall not use any advantages derivable from such Confidential Information which is directly related to the Business Purpose in its own business or affairs, unless the same is done pursuant to a new agreement executed by all signatories to this document. It is expressly agreed and understood that Confidant may conduct its business activities as currently conducted and may compete, now or in the future, with Company in other matters not directly related to the Business Purpose.

5.  **Non-Circumvention**

The Confidant hereby agrees for himself or herself, their officers, directors, agents, associates and any related parties, that they will not, directly or indirectly, contact, have discussions with, deal with, take any actions, or otherwise become involved with any third parties whether or not introduced, directly or indirectly, by or through the Company, its officers, directors, agents or associates, regarding the Business Purpose for the purpose of avoiding the payment to the Company of profits, fees or which would circumvent or impair Company's ability to pursue the Business Purpose or otherwise without the specific written approval of the Company in each instance.

6.    No Representations
The Confidant understands that the Company makes no representation or warranty as to the accuracy or completeness of the information it provides to the Confidant. The Confidant agrees that neither the Company, nor any of its advisers, representatives, agents, or employees shall be held liable for utilization of Confidential Information which results from the Confidant's use of said information.

7.    Term
This Agreement shall, by mutual consent of the parties, remain in force and affect for a period of ten years from the date signed and executed by all parties, with the effective date being the date on which the final signature is affixed hereto. Notwithstanding the foregoing, the provisions of this Agreement with respect to the Confidential Information shall remain in force indefinitely until such time as Confidential Information ceases to be defined as such under Paragraph 2(a) - (c).

8.    Equitable Remedies.  The parties hereto agree that irreparable harm would occur in the event that any of the agreements and provisions of this Agreement were not performed fully by the parties hereto in accordance with their specific terms or conditions or were otherwise breached, and that money damages are an inadequate remedy for breach of this Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered by the parties hereto in the event that this Agreement is not performed in accordance with its terms or conditions or is otherwise breached.  It is accordingly hereby agreed that a party hereto shall be entitled to an injunction or injunctions or other equitable relief to restrain, enjoin and prevent breaches of this Agreement by the other party and to enforce specifically such terms and provisions of this Agreement, such remedy being in addition to and not in lieu of, any other rights and remedies to which the other party is entitled to at law or in equity.  The Company and Confidant agree that the covenants set forth in this Agreement shall be enforced to the fullest extent permitted by law. Accordingly if, in any judicial proceeding, a court shall determine that such covenant is unenforceable for any reason, including, without limitation, because it covers too extensive a geographical area or survives too long a period of time, then the parties intend that such covenant shall be deemed to cover only such maximum geographical area and maximum period of time, if applicable, and/or shall otherwise be deemed to be limited in such manner, as will permit enforceability by such court.  In the event that any one or more of such covenants shall, either by itself or together with other covenants be adjudged to go beyond what is reasonable in all the circumstances for the protection of the interests of the Company, but would be adjudged reasonable if any particular covenant or covenants or parts thereof were deleted, restricted, or limited in a particular manner, then the said covenants shall apply with such deletions, restrictions, or limitations, as the case may be.  The Company and Confidant further agree that the covenants set forth in this Agreement are reasonable in all circumstances for the protection of the legitimate interests of the Company.

9.    Jurisdiction
a.    EACH OF THE PARTIES HERETO HEREBY CONSENTS TO THE JURISDICTION OF ALL STATE AND FEDERAL COURTS LOCATED IN THE STATE OF ARIZONA, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, ANY

PROCEEDING RELATING TO ANCILLARY MEASURES IN AID OF ARBITRATION, PROVISIONAL REMEDIES AND INTERIM RELIEF, OR ANY PROCEEDING TO ENFORCE ANY ARBITRAL DECISION OR AWARD. EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT IT SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS SECTION, OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.

b.    EACH OF THE PARTIES HERETO HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS.    IN ADDITION, EACH OF THE PARTIES CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH SECTION 10 OF THIS AGREEMENT.

10.    **Notices.** All demands, notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by facsimile machine (with a confirmation copy sent by one of the other methods authorized in this Section), national commercial overnight delivery service (including Federal Express and U.S. Postal Service overnight delivery service) or, deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, as set forth below:

If to the Company, addressed to:

_____
_____
_____
_____
Telephone No.: (___)
Email._____

If to Confidant, addressed to:

_Utah Cord Bank_____
_8675 S Sandy Pkwy Bldg 110_
_Sandy, UT 94070_____

_____
Telephone No.: (___)
Email._admin@utahcordbank.com_

Notices shall be deemed given upon the earliest to occur of (i) actual receipt by the party to whom such notice is directed; (ii) if sent by facsimile machine, on the day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) such notice is sent if sent (as evidenced by the facsimile confirmed receipt) prior to 5:00 p.m. Mountain Standard Time and, if sent after 5:00 p.m. Mountain Standard Time, on the day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) after which such notice is sent; (iii) on the first business day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) following the day the same is deposited with the commercial courier if sent by commercial overnight delivery service; or (iv) the fifth day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) following deposit thereof with the U.S. Postal Service, first class prepaid certified mail return receipt requested, as aforesaid. Each party, by notice duly given in accordance therewith may specify a different address for the giving of any notice hereunder.

### 11. Miscellaneous

a. As used in this Agreement, the following terms shall have the following meanings:

1. "Agents or employees" includes the directors, officers and employees of any of the parties, it also includes the Confidant, any corporation, partnership, association, business trust, contractual organization, group, or other entity of which the Confidant is a member, officer, director, agent, trustee, beneficiary, or has a position similar to the aforementioned.

2. "Affiliate" means any entity which controls, is controlled by or is under common control of the Company or its principals; and "control" means, with respect to any entity, the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting securities, by contract or otherwise.

b. Except for the limited right to use granted in section 3(c) herein, no right or license, either express or implied, under any patent, copyright, trade secret or other intellectual property right is granted hereunder.

c. No agency or partnership relationship is created between the parties by this Agreement.

d. No party has an obligation under this Agreement to purchase any service or item from any of the other parties, or to offer any service or item for sale to any of the other parties and that any agreement to have a business relationship between the parties will exist only when such agreement is in writing and duly executed by all the parties hereto.

e. *ANY* and *ALL additions, modifications*, and *waivers* of this Agreement must be made in writing and signed by all parties. However, the failure of a party to insist on full compliance with any provisions of this Agreement in a particular instance shall not preclude it from requiring full compliance thereafter.

f.    This Agreement is made and shall be governed and construed in accordance with the laws of the State of Arizona. The proper venue for any action arising from or in connection to the interpretation or enforcement of this Agreement shall be decided by the Company.

g.    If any portion of this Agreement shall be held invalid, such invalidity shall not affect the other provisions hereof, and to this extent, the provisions of this Agreement are to be and shall be deemed severable. If any party hereto incurs any legal fees, whether or not action is instituted, to enforce the terms of this Agreement or to recover damages or injunctive relief for breach of this Agreement, it is agreed that the successful or prevailing parties shall be entitled to reasonable attorney fees and other costs in addition to any other relief to which it or they may be entitled.

h.    This Agreement constitutes the entire understanding between all the parties and supersedes all previous understandings, agreements, communications and representations, whether written or oral, concerning the discussions by and between the parties hereto and the Confidential Information.

11.    **Mutuality**

To the extent that confidential information is disseminated or exchanged by both parties, such information shall be confidential as to both parties, the Companies and the Confidant.

IN WITNESS WHEREOF, the parties hereto have individually and by their duly authorized representatives executed and delivered this Agreement, to be effective as of the date first written above.

AGREED TO AND ACCEPTED BY:

SURGENEX, LLC
(THE COMPANY(S))

by:_____

_____
Abel Bullock, Individually

CONFIDANT:

COMPANY NAME: Utah Cord Bank, Inc., a Utah corporation
                               (THE CONFIDANT)

by:_____
(SIGNATURE)

Name: ___Eliott Spencer_____

Title: ___CEO_____

Facsimile Number: __8019903977_____

Contact Number: ___8019903961_____