# EXHIBIT C

MANUFACTURING CONTRACT

This Contract is made effective as of __4/2/15___, 2015, (the "Effective Date") by and between Utah Cord Bank, of 8675 S. Sandy Pkwy Bldg. 110, Sandy, Utah 84070, ("UCB"), and SURGENEX, LLC, of 9627 E. Gold Dust Ave, Scottsdale, Arizona 85258, ("SURGENEX").

**1. PURPOSE OF CONTRACT.** SURGENEX is in the business of distribution of Allograft tissue, UCB agrees to produce SURGENEX's product(s), hereinafter referred to as the "Products", as set forth in Exhibit "A" in the quantity, price, and specifications determined in this Contract and via subsequent purchase orders. SURGENEX may, from time to time, request that UCB produce additional products not specified in Exhibit A, such request to be evidenced in writing issued by SURGENEX and approved by UCB. In the event UCB agrees to produce such products, the additional products shall be covered by this Contract as if they were listed in Exhibit A. Nothing in this Contract, however, shall obligate SURGENEX to appoint UCB as a manufacturer for any additional products nor shall it obligate UCB to accept additional products not listed in Exhibit A which is attached hereto and incorporated by reference herein.

**2. MANUFACTURED ITEMS.** UCB agrees to sell, and SURGENEX, agrees to buy, the Products in accordance with the terms and conditions of this Contract:

| Description | Unit Price | Total Price |
|---|---|---|
| Morselized tissue allograft derived from amniotic tissues | 1/2 CC | $25.00 |
| Morselized tissue allograft derived from amniotic tissues | 1 CC | $30.00 |
| Morselized tissue allograft derived from amniotic tissues | 2 CC | $35.00 |

**3. PRODUCT STANDARDS; LABELING.** The Products shall comply with the specifications in the attached Exhibit A and Exhibit B. UCB shall include such information on the Product labels as required by law and as may be required to address an Initiated Recall as defined below. If requested by SURGENEX, UCB will use labels with such other information as requested by SURGENEX.

**4. PAYMENT.** Payment shall be made to 8675 S. Sandy Pkwy Bldg. 110, Sandy, Utah 84070. SURGENEX agrees to pay UCB net 30 days after delivery of shipment. In addition to product cost SURGENEX will cover the shipping cost and the cost of testing as set forth in Exhibit "B" which is attached hereto and incorporated by reference herein.

**5. DELIVERY.** Time is of the essence in the performance of this Contract. Any orders SURGENEX places with UCB shall be placed by sending written purchase orders to UCB by facsimile, electronic mail or other similar transmission and/or mailed via US Postal Service or airmail carrier. Orders shall be shipped out same day if ordered by 12:00pm Mountain Standard Time. A purchase order submitted by SURGENEX in accordance with this Section 5 and receipt confirmed by UCB as set forth in the next sentence shall constitute a firm commitment by SURGENEX to purchase, and UCB to manufacture, deliver and sell to SURGENEX, the Products specified in the purchase order. After receipt of a purchase order, UCB shall use commercially reasonable efforts to issue an order acknowledgement within 2 hours on the same business day, specifically making reference to SURGENEX's purchase order confirming the purchase order. Each purchase order shall include or state (i) the purchase order number, (ii) the quantity of units of each Product, (iii) the price of each item ordered, (iv) the requested delivery date and delivery

1

address, (v) the billing address, and (vi) the signature of (and the date of signing by) SURGENEX's authorized purchasing agent. Risk of loss to the Products shall pass to SURGENEX upon the delivery of the Product. Delivery of the Products shall be made by next day air unless otherwise agreed to in writing by the parties.

## 6. TERM AND TERMINATION.

(a)     The "Initial Term" of this Contract shall begin on the Effective Date and shall continue for 5 years. Thereafter, it shall renew for successive one (1) year terms (each a "Renewal Term") unless notice of intention not to extend this Contract is communicated in writing at least one hundred and eighty days (180) days prior to the then current expiration date by either party.

(b)     Either Party may terminate this Contract for cause by providing the other with thirty (30) days' written notice. Cause shall mean (a) that a party has engaged in acts or omissions with respect to the non-offending party that constitute intentional misconduct or a knowing violation of law, as reasonably determined by the non-offending party; (b) that party has engaged in gross negligence in the performance of its duties to the non-offending party; (c) has been or has one or more of its principal officers have been, convicted of an aggravated felony (or of a lesser offense if such lesser offense involved financial misconduct) that in the non-offending party's reasonable determination negatively impacts the non-offending party's image or business; (d) has committed fraud against the non-offending party, has committed theft or conversion of any assets of the non-offending party or has accepted or solicited any bribe, kickback or graft; or (e) has frequently and repeatedly failed to perform the services required of it under this Contract, provided in the case of (e), the non-offending party has given the offending party written notice describing the nature of its failure to perform and the offending party has had a reasonable opportunity (not to exceed thirty (30) days) to cure the acts or omissions on which the failure to perform is based. If the offending party timely cures the acts or omissions on which a finding of failure to perform is based under item (e), the non-offending party will not have Cause to terminate this Contract.

(c)     SURGENEX may terminate this Contract upon notice to UCB on any of the following events: any assignment by UCB of any interest in this Contract or delegation of UCB's obligations without SURGENEX's written consent; any sale, transfer or relinquishment, voluntary or involuntary, by operation of law or otherwise, of a material interest in the direct or indirect ownership in UCB; or failure of UCB for any reason to function in the ordinary course of business.

(d)     Either party may, at its option, terminate this Contract upon thirty (30) days' prior written notice without liability in the event of: (a) insolvency of the other party, (b) voluntary filing of petition for bankruptcy by the other party, (c) any filing of involuntary bankruptcy against the other party, (d) appointment of receiver or trustee for the other party, (e) an assignment for the benefit of the other party's creditors, or (f) any other act for the protection of debtors is filed by or against either party. For purposes of this Contract, a party is "insolvent" who either has ceased to pay its debts in the ordinary course of business or cannot pay its debts as they become due or is insolvent within the meaning of the US federal bankruptcy law.

(e)     The Parties agree that in the event of termination or expiration of this Contract, all Confidential Information which is the property of UCB or SURGENEX, shall be promptly returned to the

2

disclosing Party, except that one copy thereof may be maintained in the file of the receiving party's legal representation to document information disclosed by the other party.

**7. PAYMENT OF TAXES.** SURGENEX agrees to pay all taxes of every description, federal, state, and municipal, that arise as a result of this sale, excluding income taxes.

**8. INDEMNITY AND INSURANCE.**

(a)      UCB shall indemnify, defend and hold SURGENEX harmless from any and all claims, demands, actions and causes of action against SURGENEX in connection with any and all injuries, losses, damages or liability of any kind whatsoever (except for indirect or consequential damages) directly attributable to the breach by UCB of its obligations under this Contract. This indemnification obligation shall include, without limiting the generality of the foregoing, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense or settlement of any and all claims, demands, actions or causes of action. UCB's obligations to defend and indemnify is subject to the conditions that SURGENEX promptly notifies UCB of any such claim or demand and permit UCB to have sole control the defense and settlement thereof. UCB represents that it now has in force a valid comprehensive liability for defects in the Products in the amount of at least one million dollars $1,000,000 per claim/three million $3,000,000 per aggregate, and that the policy covers the risk of liability for defects in the Products. If this insurance coverage should change or lapse, UCB agrees that SURGENEX may pay the insurance premiums and deduct this expenditure from the payment due on the Products, beginning with the first shipment of Products following the expenditure.

(b)      SURGENEX shall indemnify, defend and hold UCB harmless from any and all claims, demands, actions and causes of action against UCB in connection with any and all injuries, losses, damages or liability of any kind whatsoever (except for indirect or consequential damages) directly attributable to the breach by SURGENEX of its obligations under this Contract. This indemnification obligation shall include, without limiting the generality of the foregoing, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense or settlement of any and all claims, demands, actions or causes of action. SURGENEX's obligations to defend and indemnify is subject to the conditions that UCB promptly notifies SURGENEX of any such claim or demand and permit SURGENEX to have sole control the defense and settlement thereof.

**9. WARRANTIES.** UCB warrants to SURGENEX that:

(a)      that (i) the Products will conform substantially to the design standards of the standards, specifications protocols which have been provided to UCB by SURGENEX via a separate document(ii) the Products are and will be safe, the Products purchased under this Contract will be properly, adequately and safely packaged and labeled, and the Products comply and will comply with all applicable laws, rules and regulations of the United States of America; and (iii) the Products and, unless provided by SURGENEX, packaging of the Products do not and will not violate any patent, copyright, trademark, service mark or other right and do not and will not contain any item, part or material which UCB is not authorized to use.

(b)      that all Products sold and distributed hereunder shall be merchantable and shall meet all standards of quality imposed by Federal law and by the laws of the State wherein the Product is to be

3

distributed, and that all Products furnished under this Contract will be free from manufacturing defect(s). UCB will indemnify, defend and hold harmless SURGENEX against any liability and will pay any loss, damage, cost and expense (including, without limitation, legal fees and disbursements, court costs and the cost of appellate proceedings) which SURGENEX incurs arising out of or in connection with the use of the Products or labels of Products (except as provided by SURGENEX) and shall hold harmless and indemnify SURGENEX against any liability, damage or expense incurred in connection with any such suit and cooperate in the defense thereof to the extent reasonably required by SURGENEX and further provided that such suit, liability, damage or expense not arise out of SURGENEX's gross negligence or failure to comply with any terms of this Contract.

**10. RECALLS.** As used herein, "Initiated Recall" shall mean a recall (a) initiated at the direction of the Federal Food and Drug Administration or other regulatory authority, arising out of, based on, or caused by defects in materials or workmanship, improper manufacture of the Products; or (b) initiated voluntarily by either party where evidence indicates that defects in materials or workmanship, improper manufacture of the Products, or failure of the Products warrants such a recall. Each party shall promptly notify the other party of any situation which may lead to an Initiated Recall of the Products, however, SURGENEX and UCB shall have joint authority as to whether to institute a voluntary recall. UCB shall notify SURGENEX, in writing, if it is required to implement a total or partial Initiated Recall. Both parties agree to work together to properly manage an Initiated Recall, foremost in terms of urgency and safety for the end customer, and secondly for the efficient utilization of resources to accomplish such Initiated Recall. The costs of any total or partial Initiated Recall shall be allocated as follows, regardless of whether it was recalled by SURGENEX, UCB, or a governmental or regulatory authority: (a) if the defects or problems giving rise to the reason for the Initiated Recall can reasonably be deemed to be the direct result of negligent or willful acts or omissions on the part of SURGENEX, SURGENEX shall bear the out-of-pocket costs and expenses associated with the Initiated Recall; (b) if the defects or problems giving rise to the reason for the Initiated Recall can reasonably be deemed to be the direct result of negligent or willful acts or omissions on the part of UCB, UCB shall bear the out-of-pocket costs and expenses associated with the Initiated Recall; (c) if the defects or problems giving rise to the reason for the Initiated Recall can reasonably deemed to be the direct result of negligent or willful acts or omissions by both parties, each party will bear a portion of the out-of-pocket costs and expenses roughly commensurate with its proportional responsibility for the Initiated Recall, and (d) if it cannot reasonably be determined which party was responsible for the defects or problems giving rise to the reason for the Initiated Recall, then the parties shall equally share the out-of-pocket costs and expenses associated with the Initiated Recall.

**11. INSPECTION.** SURGENEX LLC, upon receiving possession of the Goods, shall have a reasonable opportunity to inspect the Goods to determine if the Goods conform to the requirements of this Contract. All claims for Product shortages, non-conforming Products, damaged Products, and/or for incorrect charges, must be presented to UCB within twenty days after the date the Product is delivered; otherwise, the Products shall be deemed accepted. SURGENEX will return to UCB, at UCB's expense, any damaged or defective Products, and SURGENEX will furnish UCB with an affidavit by one of SURGENEX's authorized representatives as to any Products which are not delivered.

4

**12. NOTICE.** Any notice or communication required or permitted under this Contract shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

**13. AMENDMENT.** This Contract may be modified or amended if the amendment is made in writing and signed by both parties.

**14. SEVERABILITY.** If any provision of this Contract shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**15. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

**16. NO DISPARAGEMENT.** Each party agrees that upon or after any termination of this Contract for any reason, it will not make or publish, or cause to be made or published, orally or in writing, disparaging or derogatory statements about the other party or the other party's business, products or services, whether or not such statements are true, to any third parties, including, but not limited to, customers, potential customers, the press, or present or prospective employers, provided that nothing contained herein shall affect or limit statements or responses given in any governmental or judicial proceeding or as otherwise required by law

**17. ATTORNEY'S FEES.** If any action at law or in equity is brought to enforce or interpret the provisions of this Contract, the prevailing party will be entitled to reasonable attorney's fees in addition to any other relief to which that party may be entitled.

**18. HEADINGS.** Heading used in this Contract are provided for convenience only and shall not be used to construe meaning or intent.

**19. APPLICABLE LAW.** This Contract shall be governed by the laws of the State of Arizona, without regard to its conflicts of laws principles. Any actions arising hereunder shall be brought exclusively in the State and federal courts in and for Maricopa County, Arizona.

**20. SIGNATURES.** This Contract shall be signed on behalf of SURGENEX, by Abel Bullock and on behalf of Utah Cord Bank by Eliott Spencer. This Contract may be executed in counterparts which, when taken together, shall constitute one document. Facsimile and electronic signatures shall be deemed as originals and have full legal effect.

SIGNATURE PAGE FOLLOWS

5

Buyer:
SURGENEX, LLC

By:_____

          Abel Bullock, President and CEO


Manufacturer:
Utah Cord Bank

By:_____

          Eliott Spencer, CEO

6

## EXHIBIT A

The Products, morselized tissue allograft derived from amniotic tissue, shall be processed in such a way that are entirely free of any known hazardous and infectious diseases, including non hazardous diseases such as infectious diseases that are considered non-threatening. The standard of quality will meet and exceed the industry standards and shall be processed in such a way that is defined as minimally manipulated by the Food and Drug Administration.

The Products shall also meet or exceed testing results given showing concentration of 2.7 million viable cells per 1CC.

UCB shall use either hand written or bar code labels for product tracking purposes. The labels shall be placed on the pouch that holds the vial. These labels should include 1) The Placenta ID number (lot number) 2) Product ID number (provided by SURGENEX) 3) Expiration date. It is the responsibility of UCB to maintain records of all lot numbers.

## EXHIBIT B

Testing of Samples: The product is to be tested twice to ensure product safety. These tests will be agreed to in writing and tested prior to shipping to customers.

7