1  **DANIEL S. HO, ESQ.**
   State Bar No.  025311
2  **JUSTIN L. WYATT, ESQ.**
   State Bar No. 032215
3  **HO LAW GROUP, PLC**
   11811 N. Tatum Boulevard, Suite 2900
4  Phoenix, Arizona 85028
   Telephone:   (602) 354-7346
5  Facsimile:    (602) 354-7469
   Email:         daniel@holawplc.com
6                 justin@holawplc.com

7  *Attorneys for Plaintiffs*

8          **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE DISTRICT OF ARIZONA**

10 SURGENEX, LLC, an Arizona Limited           Case No. 2:17-CV-02483-SPL
   Liability Company; ABEL BULLOCK, an
11 individual;                                  **FIRST AMENDED COMPLAINT**

12                 Plaintiffs,                  (Breach of Contract; Breach of Implied
                                                Covenant of Good Faith and Fair Dealing;
13 v.                                           Unjust Enrichment; Conspiracy;
                                                Conversion; Tortious Interference with
14 PREDICTIVE THERAPEUTICS, a Utah              Contractual Relations; Arizona Trade
   Limited Liability Company; PREDICTIVE        Secrets Act; Tortious Interference with
15 BIOTECH, INC., a Utah Corporation;           Business Relations; Injunctive Relief)
   UTAH CORD BANK, INC., a Utah
16 Corporation; DOUG SCHMIDT, an
   individual; ELLIOTT SPENCER, an
17 individual; JOHN DOES I-X; JANE DOES
   I-X; BLACK CORPORATIONS I-X;
18 WHITE PARTNERSHIPS I-X; AND/OR
   SOLE PROPRIETORSHIPS; and RED
19 LIMITED LIABILITY COMPANIES I-X;

20                 Defendants.

21

22

23        Plaintiffs Surgenex, LLC, ("Surgenex"), an Arizona Limited Liability Company,

24 and Abel Bullock ("Mr. Bullock")(cumulatively, "Plaintiffs") for their First Amended

25 Complaint ("Complaint") against Defendants Predictive Therapeutics, LLC, ("Defendant

26 Predictive" or "Predictive") a Utah Limited Liability Company, Defendant Predictive

Biotech, Inc., ("Defendant Biotech" or "Biotech") a Utah Corporation, Defendant Utah Cord Bank, Inc. ("Defendant UCB" or "UCB"), a Utah Corporation, Defendant Doug Schmid ("Defendant Schmid" or "Schmid"), and Defendant Elliott Spencer ("Defendant Spencer" or "Spencer")(cumulatively, "Defendants"), states and alleges as follows:

## PARTIES AND JURISDICTION

1.     Surgenex is an Arizona Limited Liability Company duly organized and existing under the laws of the State of Arizona, with its principal offices located at 15444 N. 76th Street, Suite C110, Scottsdale, Arizona, 85260.  All owners and members are citizens of the State of Arizona.

2.     At all times material hereto, Mr. Bullock resided in and is a citizen of the State of Arizona.  Mr. Bullock is a principal of Surgenex, and at all times material hereto, was acting both individually and on behalf of Surgenex.

3.     Defendant Predictive is a Utah Limited Liability Company, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 Parleys Way, Suite 100, Salt Lake City, UT 84109. Upon information and belief, all owners and members are citizens of the State of Utah.

4.     Upon information and belief, Defendant Predictive caused events to occur in the State of Arizona out of which Plaintiffs' claims arise, and ~~which~~ is doing business in the State of Arizona.

5.     Defendant Biotech is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 2749 E. Parleys Way, Suite 101, Salt Lake City, Utah 84109.

6.     Upon information and belief, Defendant Biotech caused events to occur in the State of Arizona, out of which Plaintiffs' claims arise, and is doing business in the State of Arizona.

7.     Defendant UCB is a Utah Corporation, duly organized and existing under the laws of the State of Utah, with its principal offices located at 8675 S. Sandy Parkway, Sandy, Utah, 84070.

8.     Upon information and belief, Defendant UCB caused events to occur in the State of Arizona, out of which Plaintiffs' claims arise, and is doing business in the State of Arizona.

9.     At all times material hereto, Defendant Schmid was and is a citizen of the State of Utah at the time of filing the above-captioned action, and currently resides at 1877 Summer Park Circle, Sandy, Utah 84093-1475.  At all relevant times, Defendant Schmid was acting individually and on behalf of Defendant UCB.

10.    At all times material hereto, Defendant Schmid was conducting business within the course and scope of his employment with Defendant UCB as its agent and principal; accordingly, Defendant UCB is vicariously liable for the conduct of Defendant Schmid, in accordance with the Doctrine of *Respondeat Superior*.  As alleged above, Defendant Schmid was also acting individually and in his personal capacity.

11.    At all times material hereto, Defendant Spencer was and is a citizen of ~~resided in~~ the State of Utah at the time of filing the above-captioned action, and currently resides at 23 Sunwood Lane, Sandy, Utah 84092-4802.  At all relevant times, Defendant Spencer was acting individually and on behalf of Defendant UCB.

12.    At all times material hereto, Defendant Spencer was conducting business within the course and scope of his employment with Defendant UCB as its agent and principal; accordingly, Defendant UCB is vicariously liable for the conduct of Defendant Spencer, in accordance with the Doctrine of *Respondeat Superior*.  As alleged above, Defendant Spencer was also acting individually and in his personal ~~and marital~~ capacity.

13.    Defendants have caused events to occur in the State of Arizona out of which Plaintiffs' claims arise, and are doing business in the State of Arizona.

14.    This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because (1) Surgenex is an Arizona Limited Liability Company with its principal place of business in Scottsdale, Arizona, and its witnesses are either located in the Phoenix area or are available in the Phoenix area; (2) Defendant Predictive is a Utah Limited Liability Company; (3) Defendant Biotech, and Defendant UCB are Utah Corporations, and thus there is complete diversity of citizenship between Plaintiffs and Defendants; (4) the amount in controversy exceeds $75,000.00; (5) there are no other matters pending between the parties in any other jurisdiction; (6) Defendant UCB, through its agents, Defendant Schmid and Defendant Spencer, executed the contracts the various contracts contained *infra* which contained clauses specifying that they would be construed according to Arizona law and submitting to Arizona jurisdiction; and (7) Defendants have caused events to occur in the State of Arizona out of which Plaintiffs' claims arise.

15.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because this lawsuit relates to contracts entered into and/or conduct, acts, and/or omissions which occurred in the District of Arizona.

16.    The exercise of personal jurisdiction over Defendants UCB by this Court is proper pursuant to and because, among other reasons, Defendant UCB has a business relationship with Plaintiffs where ~~they have~~ Defendant UCB contractually agreed to produce materials and products on an ongoing regular basis. Further, pursuant to said contractual agreements discussed *infra*, Defendant UCB and Defendant Spencer have explicitly consented to personal jurisdiction in Arizona.

17.    The exercise of personal jurisdiction over Defendants Predictive and Biotech by this Court is proper pursuant to and because, among other reasons, Defendants Predictive and Biotech have sufficient minimum contacts with the forum state.

18.     Upon information and belief, Defendants Predictive and Biotech purposefully engage in and transact business in Arizona, enter contracts with Arizona residents, call upon Arizona residents and businesses, ship materials to Arizona, accept payments from Arizona, seek investors from Arizona, and have other substantial contacts with Arizona. Further, it is reasonably foreseeable that Defendants Predictive and Biotech will continue to have substantial contacts with the forum state, as they engage in marketing, capital building, and sales on a national level.  As such, Defendants Predictive and Biotech have sufficient minimum contacts with the forum state for this Court to property assert personal jurisdiction over these entities in this matter.

19.     The exercise of personal jurisdiction over Defendant Spencer by this Court is proper because Defendant Spencer explicitly consented to personal jurisdiction in the forum chosen by Plaintiffs via the contractual agreements discussed *infra*.

20.     The exercise of personal jurisdiction over Defendant Schmid by this Court is proper because Defendant Schmid regularly emailed, called, and contacted various parties, including Plaintiffs, in Arizona.  Upon information and belief, Defendant Schmid has traveled to Arizona on various occasions and has established, or assisted in establishing, another business and tissue bank in Arizona.  Defendant Schmid has also personally conducted business with other companies in Arizona prior to his employment with Defendant UCB and Defendants Predictive and/or Biotech.  Defendant Schmid has also personally emailed and contacted various parties located in Arizona, including Plaintiff's counsel.  Further, Defendant Schmid knew or should have known that the acts of his co-conspirators would subject him to jurisdiction in Arizona.  As such, Defendant Schmid has sufficient minimum contacts with the forum state for this Court to assert personal jurisdiction over him in this matter.

**GENERAL ALLEGATIONS**

5

21.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

22.     Surgenex is the producer and distributor of the highest quality amniotic membrane tissue allograft in such industry, and produces products used for a wide variety of medical applications.

23.     In an effort to develop its product line and business, Surgenex sought out a laboratory to assist in the development and production of new processes, procedures, and protocols relating to allograft tissue.

24.     Surgenex eventually retained and contracted with Defendant UCB to assist in the development and production of processes, procedures, and protocols to further its business purpose, as set forth below.

25.     Surgenex anticipated and expected to develop and service a market for a flowable allograft stem cell product for medical and pharmacological uses.  As such, Surgenex developed the market for its products and developed a significant customer base.

**The Consultant Agreement with UCB**

26.     On or about December 4, 2014, Mr. Bullock and Surgenex entered into a consultant agreement (the "Consultant Agreement") with Defendant UCB, attached hereto as **Exhibit A** and incorporated by reference herein.  The Consultant Agreement was executed by Mr. Bullock on behalf of himself and Surgenex, and by Defendant Spencer, on behalf of Defendant UCB.

27.     The Consultant Agreement was effectuated to assist Mr. Bullock, as a principal of Surgenex, in developing a proprietary protocol to harvest stem cells from amniotic and other stem-cell rich tissue, and to assist Surgenex in developing and producing biomedical products derived from stem cells.

28.     Pursuant to the Consultant Agreement, it was agreed that UCB would develop certain inventions, products, protocols, strategies, reports, technical information, designs, and other things that would be considered work product ("Work Product").

29.     Pursuant to the Consultant Agreement, the Work Product developed by UCB for, with, and/or pertaining to Surgenex would be "Work Made for Hire" as is defined in 17 U.S.C.S. § 101 and throughout the Copyright Act of 1976.

30.     Pursuant to the Consultant Agreement, all rights, title, and interest in and to any Work Product, including all modifications, derivative works, and copies were to remain the sole and exclusive property of Surgenex.

**The Non-Disclosure, Non-Circumvention and Non-Competition Agreement**

31.     On or about December 16, 2014, Mr. Bullock and Surgenex entered into a non-disclosure, non-circumvention and non-competition agreement (the "Non-Compete Agreement") with Defendant UCB, and Defendant Spencer, personally.

32.     Pursuant to the Non-Compete Agreement, Mr. Bullock and Surgenex would share confidential information, trade secrets and other confidential and/or proprietary information concerning the development of a protocol regarding morselized flowable tissue allograft derived from amniotic tissues.   This was established as the business purpose (the "Business Purpose").

33.     Pursuant to the Non-Compete Agreement, Defendant Spencer, Defendant UCB and/or its agents agreed to keep confidential all analysis, processes, methods, techniques, systems, formula, research, *inter alia*, and all similar or related information, including the Business Purpose and Work Product ("Confidential Information") that Defendant Spencer or Defendant UCB received relating to Surgenex or Mr. Bullock that was not otherwise generally known to the public.

34.    Pursuant to the Non-Compete Agreement, Defendant Spencer, Defendant UCB and/or its agents agreed to not use any advantages derivable from the Confidential Information in its own business or affairs.

35.    Pursuant to the Non-Compete Agreement, Defendant Spencer and Defendant UCB and/or its agents expressly agreed to not compete with Surgenex in matters directly related to the Business Purpose.

36.    Pursuant to the Non-Compete Agreement, Defendant Spencer and Defendant UCB and/or its agents explicitly agreed that they would not, directly or indirectly, contact, have discussions with, deal with, take any actions, or otherwise become involved with any third parties that compete with Surgenex, or would circumvent or impair Surgenex's ability to pursue its Business Purpose.

37.    Pursuant to the Non-Compete Agreement, Defendant Spencer and Defendant UCB explicitly agreed to and consented to the venue selected by Surgenex.

38.    Defendant Spencer executed the Non-Compete Agreement on behalf of himself and Defendant UCB.

### The Manufacturing Agreement

39.    Having been successful at developing and inventing new processes, procedures, and protocols relating to allograft tissue, and in developing products for market, Surgenex had related discussions with Defendant UCB and Defendant Spencer and sought to begin commercial production of certain products, which was known or should have been known by Defendant UCB and Defendant Spencer as early as December 2014.

40.    On or about April 2, 2015, Surgenex entered into a manufacturing contract (the "Manufacturing Contract") with Defendant UCB.

41.    Pursuant to the Manufacturing Contract, Defendant UCB agreed to commercially manufacture certain allograft products for Surgenex.

1    42.    Defendant UCB commenced production and Surgenex and Defendant UCB

2    engaged in a satisfactory relationship.

3    43.    The Consultant Agreement, Manufacturing Agreement, and Non-Compete

4    Agreement may be cumulatively referred to as the "Contracts" for brevity.

5                                    **Defendant UCB**

6    44.    At all relevant times, Defendant UCB was the entity engaged by Plaintiffs to

7    develop proprietary protocols to harvest stem cells from amniotic and other stem-cell rich

8    tissue, and to assist Surgenex in developing and producing biomedical products derived

9    from stem cells for market, as discussed *supra*.

10    45.    Defendant UCB was engaged through the Contracts and was given Confidential

11    Information, and was contracted to develop and produce products.

12    46.    Plaintiffs, through Defendant UCB, developed protocols and products that are

13    confidential and protectable.  This was known to Defendant UCB and the Contracts were

14    implemented to protect this information.

15    47.    Defendant UCB, and/or its agents, allowed Plaintiffs' Confidential Information,

16    Work Product, and other protected information to be disseminated to outside parties, in

17    violation of the Contracts, whereby Plaintiffs have sustained damages.

18    48.    Further, despite the Contracts explicitly prohibiting such, Defendant UCB is

19    now directly manufacturing, marketing, and competing with Surgenex with the product

20    known as "Stemshot," which was developed using Work Product and Confidential

21    Information belonging to Plaintiffs.  Thus, Defendant UCB has breached the Contracts

22    with Plaintiffs, and Plaintiffs have been damaged and continue to incur damages.

23                                    **Defendant Schmidt**

24    49.    At all relevant times of contracting, Defendant UCB had two principals,

25    Defendant Spencer, the Chief Executive Officer ("CEO"), and Defendant Schmid.

26

9

50.     Upon information and belief, and at all relevant times, Defendant Schmid was an officer and/or agent of UCB, and held a 40% ownership in Defendant UCB.

51.     Upon information and belief, Defendant Spencer and Defendant Schmid routinely communicated and discussed the business affairs and decisions of Defendant UCB, including but not limited to the Contracts. Further, upon information and belief, at all relevant times hereto, Defendant Spencer and Defendant Schmid approved and consented to the actions taken by Defendant UCB, and each other, as alleged herein.

52.     All relevant Contracts were timely and properly executed by Defendant Spencer, thus binding Defendant UCB, its agents and official representatives.

53.     In accordance with the Doctrine of *Respondeat Superior*, Defendant UCB is vicariously liable for the conduct of Defendant Schmid.

54.     Defendant Schmid actively participated in the development, fabrication, and production of Surgenex's Work Product.

55.     Defendant Schmid was exposed to and received significant and substantial Confidential Information relating to Surgenex and/or Surgenex's Work Product.

56.     As a result of this exposure, Defendant Schmid became aware of, and/or had access to, the significant market and business relations and expectancies of Surgenex and the market and customer base that Surgenex had developed.

57.     On or about December 2015, Defendant Schmid provided notification to Defendant Spencer that he was leaving Defendant UCB and would be selling his interest to pursue other opportunities.

58.     Upon information and belief, Defendant Schmid was courting and/or being courted by other companies in a wrongful effort to exploit, convert, and usurp Surgenex's Work Product, Confidential Information, opportunities and business expectancies.

59.     Upon information and belief, Defendant Predictive and/or Defendant Biotech offered Defendant Schmid stock options and shares of stock in exchange for Surgenex's customer list, Confidential Information, or other proprietary information.

60.     As a result of the offerings from Defendant Predictive and/or Defendant Biotech, Defendant Schmid left Defendant UCB and was retained by Defendant Predictive.

61.     Defendant Schmid was acutely aware of Surgenex's customer lists, shipping information, ordering information, Confidential Information, and other proprietary information as he was engaged first hand in production, packaging, and shipping to Surgenex's customer base.

62.     Defendant Schmid was further acutely aware that this information was confidential and proprietary, and that he was bound by the Contracts to not disclose or usurp this information.

63.     Upon information and belief, Defendant Schmid conspired and took overt acts in furtherance of such conspiracy, and entered an agreement with Defendant Predictive and/or Defendant Biotech to usurp, convert, and interfere with Surgenex's business expectations, for their own benefit and to the detriment of Surgenex and Mr. Bullock.

64.     Upon information and belief, Defendant Schmid contracted and/or was retained by Defendant Predictive on or about February 2016.  Defendant Predictive was a biotech company at the time, but is now competing directly with Surgenex, since receiving Confidential Information from Defendant Schmid.

65.     As a result of Defendant Schmid's wrongful actions, Defendants Schmid, Predictive, and/or Biotech have strategically targeted Surgenex's established customer base in an attempt to usurp and interfere with Surgenex's business relations and expectancies.

11

66.     After receiving notice that Defendant Schmidt was pursuing this course of action, in an effort to protect its interests and property, Surgenex, through counsel, sent a cease and desist letter to Defendant Schmid, Defendant Predictive, and Defendant UCB on or about February 8, 2016 (the "C&D Letters").  The C&D Letters were sent through the United States Postal Service via Certified Mail.

67.     In the C&D Letters, Surgenex identified and put on formal notice its position regarding the wrongful activities of all Defendants.  Surgenex asserted its position on the proprietary and confidential nature of the products and process, and that it would aggressively pursue any and all breaches.  Defendants received explicit notice of the proprietary and confidential nature of the materials and information transferred by Defendant  Schmid, and were explicitly advised against using Surgenex's Confidential Materials and protected information.

68.     Defendant Schmid responded via email on February 11, 2016 (the "February 11 Email").  In the February 11 Email, Defendant Schmid asserted that he was not bound by any contract with Surgenex because he did not sign them.

69.     Defendant Schmid further asserted that he "does not have a contract with Predictive."  He further asserted and admitted: "I will be competing in the stem cell and stem cell product arena, but will not be using macerated amniotic membrane product." This ~~assertion~~ admission is in direct violation to the Contracts with UCB, under which Defendant Schmid is bound.

70.     After receiving additional information from Surgenex that Defendant Schmid had been in contact and/or was sharing Confidential Information and Work Product with Defendant Predictive, Surgenex's counsel sent Defendant Schmid another letter dated February 29, 2016 (the "February 29 Letter").

71.     In the February 29 Letter, Surgenex re-asserted its position and advised Defendant Schmid that he was already in breach and suffered a severe misunderstanding

or misinterpretation of his obligations pursuant to the Contracts. Surgenex urged Defendant Schmid to retain counsel prior to proceeding down his current path, in an effort to avoid protracted litigation.

72.   Defendant Schmid once again responded via email on March 4, 2016 (the "March 4 Email"). In the March 4 Email, Defendant Schmid states and admits that he has "used much of [Surgenex's] invention to isolate messenger RNA from endothelial cell layers."

73.   Upon information and belief, Defendant Schmid is now contracted and/or employed by Defendant Predictive and/or Defendant Biotech, and has actively assisted and conspired with them, and continues to do so, to use Surgenex's Confidential Information and Work Product to usurp and interfere with Surgenex's business relations and expectancies.

74.   Upon information and belief, Defendant Schmid has and/or continues to breach the Contracts that he is bound to by releasing and/or using Work Product and Confidential Information belonging to Surgenex.

75.   Upon information and belief, Defendant Schmid has developed, assisted in developing, or directed—either alone or with assistance of other Defendants—a competitive product that is conspicuously similar to Surgenex's products.

76.   Defendants Schmid, Predictive, and Biotech have conspired and have taken overt acts in furtherance of the conspiracy, to convert, misappropriate, and usurp Surgenex's Confidential Information, Work Product, and intentionally interfere with Surgenex's business relations and expectancies. Said Defendants now actively compete directly with Surgenex in a very unique and specific field that was unknown to them prior to Surgenex retaining Defendant UCB and exposing its Confidential Information and Work Product to Defendant UCB.

77.   Upon information and belief, Defendant Schmid holds himself out to be the "founder" of Surgenex, and wrongly represents that he invented the proprietary processes and Work Product.   Defendant Schmid has attempted to market himself directly to Surgenex's existing customers based on his claims that he was actually the "founder."

**Defendant Spencer**

78.   At all relevant times of contracting, Defendant Spencer was the President and CEO of Defendant UCB.

79.   Upon information and belief, and at all relevant times, Defendant Spencer was an officer and agent of Defendant UCB, and held a 60% ownership in Defendant UCB.

80.   All relevant Contracts were timely and properly executed by Mr. Spencer, thus binding Defendant UCB, its agents and official representatives.

81.   Defendant Spencer also bound himself personally to the Non-Compete Agreement.

82.   Defendant Spencer actively participated in the development, fabrication, and production of Surgenex's Work Product.

83.   Defendant Spencer was exposed to and received significant and substantial Confidential Information relating to Surgenex and/or Surgenex's Work Product, including Surgenex's customer lists and ordering information.

84.   Upon information and belief, Defendant Spencer is now employed or affiliated with Defendant Predictive and/or Defendant Biotech, and Defendant Schmid.

85.   Upon information and belief, Defendant Spencer allowed Surgenex's Confidential Information, Work Product, and other protected and proprietary information to be disclosed to Defendants and other outside parties, in violation of the Contracts.

86.   Upon information and belief, Defendant Spencer has and/or continues to breach the Contracts that he is bound to by releasing and/or using Work Product and Confidential Information belonging to Surgenex.

14

87.     Upon information and belief, Defendant Spencer has developed, assisted in developing, or directed either alone or with assistance of other Defendants a competitive product that is conspicuously similar to Surgenex's products.

88.     Upon information and belief, Defendant Spencer, through Defendant UCB, is now producing and marketing a competitive product called "Stemshot," that was developed using Work Product and Confidential Information belonging to Plaintiffs.

**Defendant Predictive and/or Defendant Biotech**

89.     On or about January 2016, Defendant Predictive and/or Defendant Biotech contacted Defendant UCB, Defendant Spencer, and Defendant Schmid, in an attempt to purchase Defendant UCB.

90.     Defendant Biotech is a wholly-owned subsidiary of Defendant Predictive.

91.     Upon information and belief, this purchase attempt was a veiled attempt to acquire proprietary information for competing products being produced at Defendant UCB—namely, Surgenex's materials, including Work Product and Confidential Information.

92.     Upon information and belief, Defendant Predictive and/or Defendant Biotech requested Surgenex's proprietary customer list from Defendant UCB, Defendant Spencer, and Defendant Schmid, which was Confidential Information.

93.     Defendant Predictive and/or Defendant Biotech conspired and took overt acts in furtherance of the conspiracy, with Defendants Spencer, Schmid, and UCB to convert Plaintiffs' Work Product, Confidential Information, and business expectancies.

94.     Upon information and belief, Defendant Predictive and/or Defendant Biotech offered Defendant Spencer and Defendant Schmid stock options and shares of stock in exchange for Surgenex's customer list and Confidential Information.

95.     Upon information and belief, Defendant Predictive and/or Defendant Biotech sought to make a competitive product and submit it to Surgenex's customers.  Defendant

Predictive and/or Defendant Biotech was aware of Surgenex's unique products, market, and business expectancies, and sought to usurp and convert this information and opportunity for their own benefit, to the detriment of Surgenex and Mr. Bullock.

96.   Upon information and belief, Defendant Spencer initially rebuffed Defendant Predictive and/or Defendant Biotech's request for Confidential Information.

97.   Later, as discussed *supra*, Defendant Schmid left Defendant UCB and was retained by Defendant Predictive and conspired to convert, interfere, and misappropriate Plaintiffs' Work Product and business expectancies.

98.   Once Surgenex's principal was notified of the ~~behavior of~~ actions by Defendant Schmid and Defendant Predictive, he acted promptly to protect the interests of Surgenex.

99.   As discussed *supra*, Surgenex's counsel sent Defendant Predictive a C&D Letter via Certified Mail on or about February 8, 2016.

100.  Duplicate letters were sent to both Bradley Robinson ("Mr. Robinson") directly, as well as to Defendant Predictive's office address.  Mr. Robinson is the President of Defendant Predictive.

101.  On or about February 11, 2016, Mr. Eric Olson ("Mr. Olson") called Surgenex's counsel to discuss the C&D Letter Defendant Predictive had received.  Mr. Olson is the President and CEO of Defendant Biotech.

102.  Mr. Olson asserted that Defendant Predictive had interviewed Defendant Schmid, but had no type of agreement with Defendant Schmid.

103.  Mr. Olson further asserted that they had not received any information from Defendant Schmid regarding Surgenex's products or Confidential Information.

104.  Mr. Olson further asserted that they had interviewed Defendant Schmid, but had not contracted or engaged him in any way, and had no current plans to do so.

16

105.   Surgenex's counsel requested that Mr. Olson draft and send a letter confirming his statements and Defendant Predictive's position. Mr. Olson agreed to send a letter with the requested confirmation.

106.   However, after failing to receive the agreed-upon letter from Mr. Olson, and after learning about additional communications and breaches between Defendant Schmid and Defendant Predictive from Surgenex, Surgenex's counsel sent another letter to Defendant Predictive on or about February 29, 2016 (the "February 29, Letter").

107.   On or around March 9, 2016, Mr. Olson again contacted Surgenex's counsel to discuss the February 29, Letter.  He was extremely agitated.  Mr. Olson asserted that they had still not retained and/or received anything from Defendant Schmid, and that if they did, they would immediately contact Surgenex's counsel.

108.   Mr. Olson then forwarded a letter that he had apparently drafted on February 7, 2016, after the initial conversation, but it was inadvertently sent to the incorrect email address, and not timely received by Surgenex's counsel.  The letter was received by Surgenex's counsel on March 9, 2016 (the "March 9 Letter")

109.   Pursuant to the March 9 Letter, Predictive "is not, and never has had access to any proprietary information related to the development of manufacturing."

110.   Further, the March 9 Letter asserts that they "do not have any type of agreement with Mr. Schmid for employment or consulting."

111.   Upon information and belief, Defendants Predictive and/or Biotech have used Work Product and Confidential Information belonging to Surgenex to develop the same or substantially similar or derivative products, processes, and/or protocols.

112.   Upon information and belief, Defendants Predictive and/or Biotech have begun selling and competing with Surgenex in a market/field that was known only to Surgenex, and that could not have been known without Confidential Information from Surgenex.

113.   The concept upon which Defendants Predictive and/or Biotech were and are competing was pioneered and developed by Surgenex under the protection of the Contracts.

114.   Due to Defendants' actions described above, Plaintiffs sustained damages in an amount to be proven at trial.

<u>COUNT I</u><br>(Breach of Contract – Defendants UCB and Spencer)

115.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

116.   Pursuant to the Contracts, Plaintiffs and Defendants UCB and Spencer agreed to certain terms for the development, fabrication, and production of Work Product belonging to Surgenex.

117.   Pursuant to the Contracts, Plaintiffs and Defendants UCB, Schmid and Spencer agreed to certain obligations and behavior related to confidentiality, competition, and circumvention.

118.   Defendants UCB and Spencer breached one or more of the Contracts by the actions stated *supra* and/or failed to fulfill the material terms of one or more of the Contracts.

119.   As a result of the breach or breaches of the Contracts, Plaintiffs have been damaged and continue to incur damages in an amount to be determined at trial.

120.   Pursuant to A.R.S. § 44-1201, Plaintiffs are entitled to interest on all sums due to Plaintiffs at the rate of 10% per annum from March 15, 2017, until paid.

121.   Plaintiffs are entitled to an award of their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.   If this matter proceeds as a default, a reasonable sum as and for Plaintiffs' attorneys' fees is the sum of $10,000.00.

<u>COUNT II</u>

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Defendants Schmid, UCB and Spencer)**

122.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

123.   Defendants UCB and Spencer are bound by the Contracts they entered into with Plaintiffs.

124.   Defendant Schmid is bound by the Contracts as an employee and/or agent of Defendant UCB.

125.   Every contract carries with it the implied covenant of good faith and fair dealing.

126.   Said Defendants have breached that covenant by the actions described above.

127.   Said Defendants made material representations to and concealed material facts from Plaintiffs, as described above.  Such representations include, but are not limited to, the willingness and ability to abide by the Contracts; the fact that Defendant Spencer and Defendant Schmid were engaging, conspiring and ~~or~~ discussing relations with Defendants Predictive and Biotech; Defendant Schmid's efforts and behavior in leaving ~~leave~~ Defendant UCB and competing directly with Plaintiffs ~~with~~ using Plaintiffs' Work Product and Confidential Information, Defendant Schmid wrongfully sharing and using Plaintiff's Confidential Information, Work Product, customer information, and other information for his own benefit to the detriment of Plaintiff, Defendant Spencer's efforts and behavior in duplicating Plaintiff's product and bringing a directly competing product to market to the detriment of Plaintiff.

128.   Defendant UCB is vicariously liable for the actions of its employees and/or agents through the doctrine of *respondeat superior*.

129.   Plaintiffs have been harmed by the above-described behavior of Defendants.

130.   Plaintiffs have suffered and will continue to suffer irreparable injury and monetary damages as a result of Defendants' breach unless and until the Court grants relief.

**COUNT III**
**(Unjust Enrichment —All Defendants)**

131.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

132.   Plaintiffs assert this claim as an alternative claim, in the event that there is not an adequate remedy at law.

133.   Defendants have benefited and been enriched by the receipt of Plaintiffs' Work Product, Confidential Information, derivative products, and misappropriation of Business Expectancies.

134.   Defendants have further been enriched by usurping, converting, and duplicating Plaintiffs products, business opportunities, and expectancies.

135.   Defendant Spencer and Defendant UCB have developed and marketed a directly similar and competing product, "StemShot," a derivative or duplicate of Plaintiffs Work Product.

136.   Defendants Schmid, Predictive, and Biotech have developed and marketed a directly similar and competing product, which is a derivative or duplicate of Plaintiffs Work Product.

137.   Plaintiffs are entitled to the fair and reasonable value of the lost revenue, market share, economic advantage and other losses that have resulted and will continue to incur as a result of the misappropriation of Work Product, Confidential Information, derivative works and product.

138.   Despite Plaintiffs' Demands, Defendants have failed and/or refused to cease using and misappropriating Plaintiffs' Work Product and Confidential Information, and continue to profit from derivative and/or duplicative product.

139.   Pursuant to A.R.S. § 12-341.01, Plaintiffs are entitled to an award of its attorneys' fees.  If this matter proceeds by default, Plaintiffs alleges that a reasonable amount of their attorneys' fees is $10,000.00.

**COUNT IV**
**(Conspiracy – Defendants Schmid, Spencer, Predictive, and Biotech)**

140.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

141.   Pursuant to the Contracts, Plaintiffs and Defendants agreed to certain terms regarding the development and production of Work Product, Confidential Information, and finalized commercial products.

142.   Defendants, in conjunction with one another, had the intent to promote or aid in the commission of an offense or unlawful objective, namely conversion of Plaintiffs' Work Product, Confidential Information, and to interfere with Plaintiffs' Business Expectations.

143.   Upon information and belief, Defendants Schmid, Spencer, Predictive, and Biotech, collectively, agreed with the objective and the manner in which they were to convert and intentionally interfere with Plaintiff's business relations.

144.   Upon information and belief, Defendant Schmid conspired and entered an agreement with Defendant Predictive and/or Defendant Biotech to usurp, convert, and intentionally interfere with and disrupt Plaintiffs' business relations and expectations, for their own benefit.

145.   Defendants engaged in an unlawful, overt act in furtherance of the offense and/or conspiracy.  Defendant Schmid terminated his position with UCB and affiliated

21

with Defendant Predictive and/or Defendant Biotech.   Defendant Schmid wrongfully transmitted Plaintiff's Confidential information, Work Product, customer information, and other confidential and/or proprietary information to Defendant Predictive and/or Defendant Biotech, in furtherance of their conspiracy.

146.   Defendant Schmid, Defendant Predictive and/or Defendant Biotech, in furtherance of their conspiracy, duplicated Plaintiff's Work Product and targeted and marketed directly to Plaintiff's existing customer base, effectively usurping, interfering and disrupting Plaintiff's business relations and expectations.

147.   As a result of Defendants' actions of conversion and tortious interference, Plaintiffs sustained damages.

148.   Upon information and belief, Defendants acted with a consistent pattern to undermine the Contracts to the detriment of Plaintiffs, to the extent that their conduct constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause injury and thus, constitutes conduct sufficient to incur a penalty of punitive damages.

149.   Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

**COUNT V**
**(Conversion – All Defendants)**

150.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

151.   Defendants intentionally exercised dominion and control over property belonging to Plaintiffs – namely, intellectual property, Work Product, and Confidential Information – thereby destroying the right of Plaintiffs to control and use said property. As such, Defendants conduct constituted a conversion.

152.   Defendants converted Plaintiff's property, including customer lists and ordering history.  This material was transmitted to Defendant Predictive and/or Defendant Biotech by Defendant Schmid.   Defendant Schmid was aware of Plaintiffs' customer base, ordering history, and likelihood of future orders.

153.   Upon receipt of this material Defendants Schmid, Predictive and/or Biotech used this information and strategically targeted Plaintiffs largest customers and largest accounts.

154.   Defendants converted Plaintiffs' Work Product by taking documents, data, and other materials and replicating it for their own wrongful purpose and producing substantially similar and directly competing products.

155.   As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have been damaged in an amount to be proven at trial.

156.   In converting Plaintiffs' property, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

157.   Upon information and belief, Defendants acted with and evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

158.   Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in in the future.

### COUNT VI
**(Tortious Interference with Contractual Relations – Defendants Predictive and Biotech)**

159.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

23

160.   Plaintiffs developed and entered into Contracts with Defendant UCB regarding the development, production, and protection of certain Confidential Information, Work Product, and other matters.

161.   Defendants Predictive and/or Biotech were aware of and had knowledge of said Contracts between Plaintiff and Defendant UCB, and the relationship between Plaintiff and Defendant UCB and its agents and officers.

162.   Upon information and belief, Defendant Predictive and/or Defendant Biotech intentionally induced Defendant Schmid to breach the Contracts between Plaintiff and Defendant UCB and to provide them with Plaintiffs' Confidential Information, Work Product, and customer information.

**163.**   As a result of this intentional interference, Plaintiffs have been damaged and continue to suffer damages in an amount to be proven at trial.

164.   Upon information and belief, Defendants acted with an evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

**165.**   Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future

### COUNT VII
#### (Violations of the Arizona Trade Secrets Act, A.R.S. § 44-401 *et seq* – All Defendants)

166.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

167.   Upon information and belief, Defendants, by improper means, acquired and misappropriated legally protectable trade secret information, including, *inter alia*, intellectual property, proprietary client information, Confidential Information, Work Product, and confidential processes, procedures, and protocols.   This trade secret

information consists of the methodology, processes, and marketable products developed and produced for Plaintiff by Defendant UCB.

168.  This trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic values from its disclosure or use.

169.  Plaintiffs undertook reasonable efforts under the circumstances to maintain the secrecy of this trade secret information.

170.  This acquisition was performed by a person or people who knew, or who should have known, that it was being acquired by improper means, and those persons or people used improper means to acquire Plaintiffs' trade secrets.

171.  Upon information and belief, Defendants acted willfully and maliciously in acquiring and misappropriating Plaintiffs' trade secret information.  Defendants Schmid, Predictive, and Biotech acquired this trade secret information and replicated Plaintiffs' Work Product by producing an extremely similar product produced with the same processes and methodology employed by Plaintiff.  Said Defendants then began strategically targeting and marketing to Plaintiffs' largest customers.

172.  As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

173.  In misappropriating Plaintiffs' trade secrets, Defendants acted to serve their own self-interests, despite the fact that they knew or had reason to know, and consciously disregarded, the risk that their conduct created a risk of significant harm to Plaintiffs.

174.  Pursuant to A.R.S. § 44-401 *et seq*, Plaintiffs are entitled to an award of reasonable attorneys' fees, based on Defendants' willful and malicious misappropriation of trade secrets.

**COUNT VIII**
**(Tortious Interference with Business Relations – All Defendants)**

25

175.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

176.   Plaintiffs engage in production and sale of proprietary stem cell products, and maintain, own, and utilize Confidential Information and Work Product in furtherance of their business expectancies. Plaintiffs had established a network of clients, customers, an contacts and maintained a business relationship with these parties.  Plaintiff had business expectancies to continue to sell to, service, and increase these relationships and maintain an economic advantage in this market.

177.   Defendant Schmid was aware and had knowledge of the above-described business expectancy of Plaintiff's customers, clientele, and/or prospective customers and clientele, as he was directly involved in production and shipping to said clients, customers, and contacts during his employment with Defendant UCB.

178.   Defendant Schmid conspired with and transmitted this information to Defendants Predictive and/or Defendant Biotech.  Thus, Defendants Predictive and Biotech were aware of Plaintiffs' business expectancy.

179.   Defendants Schmid, Predictive, and/or Biotech intentionally targeted, pursued, and interfered with Plaintiffs' business relationships by directly reaching out, contacting, and soliciting them with a directly competing product.  Defendant Schmid further contacted various customers and misrepresented that he was the "founder" of Surgenex, in a blatant attempt to interfere with Plaintiff's relationships.

180.   Defendant UCB was acutely aware of and had knowledge of Plaintiff's established business relationships with customers, clients, and contacts, as Defendant UCB assisted in development, production, and transmission of Plaintiffs' Work Product.

181.   Defendant UCB, in violation of the Contracts, developed a competing product, known as "StemShot," and began targeting, soliciting, and interfering with Plaintiffs' customers, clients, and contacts, using Plaintiffs information and customer lists.

182.   Defendant Spencer, as an officer of Defendant UCB was also aware of and had knowledge of Plaintiff's established business relationships with customers, clients, and contacts.  In violation of the Contracts, and through Defendant UCB, Defendant Spencer developed and marketed "StemShot," and directed the targeting, soliciting, and interfering with Plaintiffs' customers, clients, and contacts, using Plaintiffs' information and customer lists.

183.   Defendants intentionally and improperly interfered with Plaintiffs' relationships with current and/or prospective customers and/or clientele by, *inter alia*, strategically targeting and soliciting existing clientele and/or customers, misappropriating clientele and/or customers, improperly competing with converted property and/or derivative property, misrepresenting themselves, and failing to cease and desist when instructed by Plaintiffs.

184.   As a result of the actions by Defendants, Plaintiffs' business relationship and business expectancy has been disrupted and Plaintiffs have been damaged and continue to suffer damages in an amount to be proven at trial.

185.   Defendants acted improperly by interfering with Plaintiffs' business relationships and business expectancy, thereby causing damages to Plaintiffs in an amount to be proven at trial.

186.   Upon information and belief, Defendants acted with an evil hand guided by an evil mind, wherein they intended to cause injury to Plaintiffs, or alternatively, consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

187.   Plaintiffs are therefore entitled to punitive damages in an amount sufficient to stop such conduct and deter similar conduct in the future.

## COUNT IX
### (Injunctive Relief – All Defendants)

27

188.   Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

189.   As a remedy for the aforementioned claims, Plaintiffs are entitled to injunctive relief with regards to Defendants UCB and Spencer, pursuant to the explicit agreement in the Contracts, enjoining Defendants UCB and Defendant Spencer from engaging in the above-described activities.

190.   Further, Plaintiffs have incurred, and will continue to incur, significant and irreparable harm in market share and continual loss of economic advantage in this matter. Plaintiffs have incurred significant losses exceeding $100,000.00 per month in lost revenue as a direct result of the interference, conversion, and wrongful acts of Defendants.   Further, the disclosure of trade secrets and interference with customer relationships constitutes significant irreparable harm.

191.   Further, given the extremely competitive and proprietary nature of the stem cell industry and its unique characteristics and value, Plaintiffs do not have an adequate remedy at law, and an order enjoining Defendants from continuing to provide information, assistance, or any other Confidential Information or Work Product to any party is appropriate pursuant to the plain language of the Contracts.

192.   The harm to the Plaintiffs in this matter is significantly greater than the harm that would be incurred by Defendants.

193.   Plaintiffs have a reasonable likelihood of success on the merits as to the claims asserted in this Complaint.

194.   Plaintiffs lack adequate remedy at law and faces irreparable harm unless injunctive relief is granted.

195.   Implementing an injunction in this matter will further public policy and public interest, as it revolves around protection of assets and investment-backed expectations,

and in preventing wrongful misappropriation or dissemination of confidential materials and wrongfully usurping business expectancies.

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

A. For an amount to be proven at trial;

B. For interest on the principal sum at the highest rate allowed per annum from the date of Defendants' breach, until paid;

C. For punitive damages in an amount sufficient to punish the Defendants jointly and severally and to deter similar future conduct by the Defendants and other similarly situated parties;

D. For Plaintiffs' reasonable attorneys' fees incurred, or, if this matter proceeds by default, then in the amount of $10,000.00;

E. For injunctive relief;

F. For Plaintiffs' costs incurred herein; and

G. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, demand is hereby made for trial by jury of all issues in this action.


RESPECTFULLY SUBMITTED this 19th day of October, 2017.

HO LAW GROUP, PLC


*s/ Justin Wyatt*
Daniel S. Ho, Esq.
Justin L. Wyatt, Esq.
*Attorneys for Plaintiffs*

29

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on October 19, 2017, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5
           Cynthia Ricketts
6          crickets@srclaw.com
           Sacks Ricketts & Case LLP
7          2800 N. Central Avenue, Suite 1230
           Phoenix, AZ 85004
8          *Attorneys for Defendants Predictive,*
           *Biotech, and Doug Schmid*
9

10
           Marina Tsatalis
11         mtsatalis@wsgr.com
           Matt Gorman
12         mgorman@wsgr.com
           Wilson Sonsini Goodrich & Rosati
13         1301 Avenue of the Americas
           40th Floor
14         New York, NY 10019

15

16         Trisha Farmer Lau
           tlau@swlaw.com
17         Stewart Peay
           speay@swlaw.com
18         Snell & Wilmer, L.L.P
           One Arizona Center
19         400 E. Van Buren Street
           Phoenix, AZ 85004-2202
20         *Attorneys for Utah Cord Bank*
           *and Elliot Spencer*
21

22

23                                  *s/ Valerie Kennedy*

24

25

26